Bertha M. SCHMIDT, Odelia Tischmak, Angeline Mahrer, and Ralph J. Frank, Plaintiffs and Respondents,

v.

Leo R. FRANK, a/k/a Richard Frank, Ronald E. Frank, Eleanor Frank, and Rose Mary Frank, Defendants and Appellants.

No. 8230.

Supreme Court of North Dakota.

Feb. 24, 1966.

Floyd B. Sperry and Gordon Schnell, Bismarck, for appellants.

Vogel, Ulmer & Bair, Mandan, for respondents.

ERICKSTAD, Judge.

This is an appeal from a judgment of the District Court of Grant County which partitioned part of certain land and ordered that the remainder of the land be sold. The plaintiffs, Bertha M. Schmidt, Odelia Tischmak, Angeline Mahrer, and Ralph J. Frank, who are the respondents here, brought an action to partition certain real estate situated in Grant County in which they and the defendants were tenants in common. Except for Eleanor Frank, the plaintiffs and defendants are children of John A. Frank, deceased, and Eleanor Frank.

The property in dispute was owned by John A. Frank. On his death the property, consisting of approximately 19 quarter sections of land and an old grain threshing machine, was distributed to his heirs according to the law of intestate succession. The widow, Eleanor Frank, received a $\frac{1}{3}$ interest and each of the seven children received a $\frac{2}{21}$ undivided interest in the property. As the issues in this appeal relate mainly to the disposition of the real estate, we shall refer hereafter only to the real estate.

In their complaint the plaintiffs alleged that they each own an undivided $\frac{2}{21}$ interest in the real estate; that the defendant Eleanor Frank owns an undivided $\frac{7}{21}$ interest in the real estate; that the defendants Leo R. Frank, also known as L. Richard Frank, (hereafter referred to as Richard) and Ronald Frank (hereafter re-

ferred to as Ronald) each own an undivided $\frac{2}{21}$ interest in the real estate plus the undivided $\frac{2}{21}$ interest in the real estate which Rose Mary Frank conveyed to them.

They further alleged that the defendants Richard and Ronald are in possession of approximately 2,380 acres of the approximately 19 quarter sections of land involved; that they have made no arrangements for the rental thereof with the plaintiffs, who decline to rent said premises to them, and that the defendants refuse to vacate the premises; and, thus, that the plaintiffs' interests in the income and profits from the real estate are in danger of being lost. To prevent this loss they asked for the appointment of a receiver. They also asked that the property be partitioned, and, if this could not be done without material injury to the rights of the respective parties, that a part of the property be partitioned and the balance be sold, the proceeds to be applied to the payment of certain costs and then divided among the owners in proportion to their respective interests. They specifically asked that the court decree to them their proportionate share of the real estate rather than the proceeds of the sale of the real estate.

In their answer the defendants alleged that Richard owns an undivided $\frac{13}{21}$ interest in and to certain real property described by them as "Tract A" and "Tract C," subject to a mortgage in the sum of $12,909.60 to Eleanor Frank, and that Ronald is the owner of an undivided $\frac{13}{21}$ interest in the real property described by them as "Tract B," subject to a mortgage in the sum of $7,607.40 to Eleanor Frank and to a mortgage in the sum of $3,259.80 to Rose Mary Frank.

They further alleged that for 12 years past Ralph had been in possession of and had farmed Tract C, Richard had been in possession of and had farmed Tract A, and Ronald had been in possession of and had farmed Tract B, under leases with their father, John A. Frank, deceased, and that during the administration of John A. Frank's estate they farmed the same tracts.

They denied all other material allegations of the plaintiffs' complaint and requested that the court adjudge that the parties are the owners of the undivided interests as they had set them forth, that the court order a public sale of all the property, and that the land be sold in separate units of Tracts A, B, and C.

Richard apparently obtained the $\frac{13}{21}$ undivided interest in Tracts A and C by acquiring, in addition to his $\frac{2}{21}$ interest, the $\frac{7}{21}$ interest of his mother, Eleanor, the $\frac{2}{21}$ interest of his sister Rose, and the $\frac{2}{21}$ interest of his brother Ronald, all in Tracts A and C. He secured the payment of the purchase price of the interest he bought from his mother with a mortgage to Tracts A and C. Ronald apparently obtained the $\frac{13}{21}$ undivided interest in Tract B by acquiring, in addition to his $\frac{2}{21}$ interest, the $\frac{7}{21}$ interest of his mother, Eleanor, the $\frac{2}{21}$ interest of his sister Rose, and the $\frac{2}{21}$ interest of his brother Richard, all in Tract B. He secured the payment of the purchase price of the interests of his mother and sister by mortgages to Tract B.

The hearing before the trial court was held July 27, 1964. On July 28 the court appointed a receiver to collect and preserve the crops, profits, and income from the real estate and to hold the same, subject to further orders of the court. On October 13, 1964, the court appointed as referee to partition the property the person previously appointed receiver. In the same order the court appointed an appraiser. The referee made no report to the court; the appraiser, however, appraised the land and rendered his report to the court on November 24, 1964. Judgment partitioning part of the land and ordering a sale of the remainder was entered March 31, 1965.

For our purposes we have prepared two plats. Plat 1 shows the land as farmed by the three brothers prior to the partition.

Tract A, shown in solid black, was farmed by Richard; Tract B, shown in horizontal lines, by Ronald; and Tract C, shown in cross-hatching, by Ralph.

Plat 2 shows the court's partition, based on the report of the appraiser and testimony taken at the hearing. The land shown in solid black was awarded to Richard; that shown in horizontal lines, to Ronald; that shown in cross-hatching, to the plaintiffs; and that shown in dots was ordered sold.

The district court found that the total value of all of the property was $95,500; that the plaintiffs owned an undivided 8/21 interest therein of the value of $36,380.88; that the defendant Richard owned an undivided 13/21 interest in the property referred to as Tracts A and C of the value of $36,957.05; that the defendant Ronald owned an undivided 13/21 interest in the property referred to as Tract B of the value of $22,161.88. The court found the value of the land partitioned to the plaintiffs to be $31,700; the value of the land partitioned to Richard to be $32,900; and the value of the land partitioned to Ronald to be $18,500.

Proceeds of part of the land that was ordered sold were to be applied first to the payment of costs and then to be divided among the plaintiffs and defendants in accordance with the equities of the parties, and the balance of the proceeds of the land that was ordered to be sold was to be applied first toward the payment of costs and then to be divided among the plaintiffs and Ronald in accordance with the equities of the parties.

The mortgages were made charges only on the property assigned to the respective mortgagors.

The appellants' specifications of error may be consolidated and considered as three specifications.

The first specification of error is "that the court lacked jurisdiction to make a final determination as to the interests of all persons in the real property involved, because the summons was not directed generally to all persons unknown who have or claim any interest in the property."

Actions for partition are governed by Chapter 32-16, N.D.C.C. Section 32-16-05 is the statute prescribing the persons to whom the summons must be directed in a partition action. This statute reads as follows:

32-16-05. To whom summons directed.—The summons must be directed to all the joint tenants and tenants in common and all persons having an interest in or any lien of record by mortgage, judgment, or otherwise, upon the property or upon any particular portion thereof, and generally to all persons unknown who have or claim any interest in the property.

North Dakota Century Code.

The summons in this action was directed only to the four named defendants and not to "all persons unknown." The appellants contend that the statute has not been substantially complied with and thus that the court did not have jurisdiction to make a final determination of all interests in and to the property.

They state that our statute is identical to and was derived from § 756 of the California Civil Code before it was amended in 1907 and that the Code Commissioners' notes following § 756 of the present West's California Code of Civil Procedure explain that this amendment "simplifies the summons in partition * * * that it need not be directed to 'persons unknown,' when the complaint refers to known persons only." They argue that our law still requires that the summons be directed to persons unknown and that therefore the trial court did not have jurisdiction to make a final determination as to all the interests in the property.

They cite the case of Johnson v. Ranum, a quiet title action, in which this court said:

The judge of the district court finds the facts in accordance with the plaintiff's statement and further that the judgment introduced by the defendants to sustain their title was void for the reason that the service of summons by publication was void. The summons and complaint are dated on the 20th day of September, 1922, but the affidavit for service by publication was sworn to on the 3d day of September, 1922, seventeen days before the summons and complaint were issued. The

statute contemplates an affidavit made at or after the time of the filing of the verified complaint—that is it must show that the facts required by the statute exist at that time—and an affidavit made seventeen days before the institution of an action and the filing of the complaint is invalid and does not confer jurisdiction upon the court.

\* \* \* \* \* \*

In an unbroken line of decisions this court has held that, in order to get jurisdiction where the service is by publication, the statute must be strictly followed. \* \* \*

\* \* \* \* \* \*

There is no merit in the contention that the judgment obtained by Ranum cannot be attacked collaterally in this action. The judgment was void from the beginning. It protected no one acting under it, and constituted no hindrance to the prosecution of any rights. \* \* \*

Johnson v. Ranum, 62 N.D. 607, 244 N.W. 642, at 643–644.

 That case merely holds that, to obtain jurisdiction when the service is by publication, the statute must be strictly followed. Our view is that the provision directing the summons upon all persons unknown applies only in the case of service by publication. The language of the next section of the Code indicates that service in a partition action need not always be made by publication:

32–16–06. Service by publication— Notice required.—*When service of the summons is made by publication*, the summons as published must be accompanied by a notice that the object of the action is to obtain a partition of the property which is the subject of the action, briefly describing the same. [Emphasis supplied.]

North Dakota Century Code.

The language of § 32–16–08 further supports this view:

32–16–08. Title, proofs, and judgment.—The rights of the several parties, plaintiff as well as defendant, may be put in issue, tried and determined in such action, and when a sale of the premises is necessary, the title must be ascertained by proof to the satisfaction of the court before the judgment of sale can be made, and *when service of the complaint has been made by publication, like proof must be required of the right of the absent or unknown parties before such judgment is rendered,* except that when there are several unknown persons having an interest in the property their rights may be considered together in the action as not between themselves. [Emphasis supplied.]

North Dakota Century Code.

The last sentence of § 32–16–12, N.D. C.C., clearly indicates that the reference to unknown parties is to parties who are real, not speculative:

32–16–12. Sale or partition.—If it is alleged in the complaint and established by evidence, or if it appears by the evidence without such allegation in the complaint, to the satisfaction of the court, that the property, or any part of it, is so situated that partition cannot be made without great prejudice to the owners, the court may order a sale thereof. Otherwise, upon the making of requisite proof, it must order a partition according to the respective rights of the parties as ascertained by the court and appoint three referees therefor, *and must designate the portion to remain undivided for the owners whose interests remain unknown or unascertained.* [Emphasis supplied].

North Dakota Century Code.

The appellants' second specification of error is that the district court erred in making the actual partition of the specific

tracts and in determining which land should be sold, rather than allowing the referee to do the partitioning. This specification has been greatly broadened by the appellants on reargument.

In addition to § 32–16–12, N.D.C.C., the following statutes are pertinent to this discussion:

32–16–13. Method and rule of partition.—In making the partition, referees must divide the property and allot the several portions thereof to the respective parties, quality and quantity relatively considered, according to the respective rights of the parties as determined by the court, pursuant to the provisions of this chapter, designating the several portions by proper landmarks, and may employ a surveyor with the necessary assistants to aid them. * * *

32–16–14. Referee's report.—The referees must make a report of their proceedings, specifying therein the manner in which they executed their trust, and describing the property divided and the share allotted to each party with a particular description of each share.

32–16–15. Judgment on report—Effect.—The court may confirm, change, modify, or set aside the report of the referees and, if necessary, may appoint new referees. Upon the confirmation of the report, judgment must be rendered that such partition be effectual forever, and such judgment shall be binding and conclusive. * * *

North Dakota Century Code.

In our original opinion in this case, which was withdrawn following reargument, we said:

Our conclusion is that it was not error, in light of the authority given in § 32–16–15, N.D.C.C., for the court to partition the land without first receiving a report from the referee in a partition action in which the court has appointed a referee who failed to act and has appointed an appraiser who did act and who did make his report (to which no objection was made) and the court made its partition order upon the basis of said appraisal and upon the testimony of the parties taken at the hearing.

On Petition for Rehearing

In the petition for rehearing and on reargument, it was argued for the first time that the appellants do object strenuously to the appraiser's report. The appraiser's report was not a part of the settled statement of the case. It now appears that it was not made a part of the record in the trial court. The appellants say that it is an unsworn statement made by a person not provided for in the law and relates only to land values.

They further argue that they have been deprived of due process of law because they were not granted an opportunity in the trial court to make their objection to the appraiser's report and because the trial court partitioned the land on a basis other than a referee's report, without giving the appellants an opportunity to submit testimony relative to the division of the property after the undivided interests were determined.

Without determining whether this constitutes a lack of due process of law, we conclude that the requirements of our statutes have not been satisfied. We reach this conclusion in light of the objections now made to the appraiser's report, recognizing that the trial court must have leaned heavily on the report because of the sketchiness of evidence relative to the division of the land.

The judgment of the trial court is therefore modified. The part of the judgment which determined the undivided interests of the parties is affirmed; the part which made the partition of the land is reversed. The case is remanded with instructions to the trial court to request a report from the referee appointed or to terminate his ap-

pointment and appoint a new referee or referees pursuant to law, so that the court may receive a referee's or referees' report. If the appraiser's report is to be used by the referee or referees, it should be made a part of the record.

Although our statute providing for the referee's report (§ 32-16-14, N.D.C.C.) does not specifically provide for a hearing on the report, we suggest that a hearing on the report be held if a motion therefore is properly made.

In this connection we note that California, whence our statute is derived, amended its statute by adding the following:

§ 765. Report of Referees.

* * * Any party to the action, after giving at least ten days' notice in writing to the other parties who have appeared therein of his intention to do so, may move the court to confirm, change, modify, or set aside such report.

West's Ann.Cal.Code, Civil Procedure.

Because of our decision remanding the case with instructions, we deem the appellants' third specification of error—that the court erred in decreeing a partition rather than a sale—indeterminable at this time.

STRUTZ, TEIGEN and KNUDSON, JJ., concur.

BURKE, C. J., did not participate.