CITY OF FARGO, Plaintiff and Appellee,

v.

John B. BRENNAN, Defendant and Appellant.

Cr. No. 950226.

Supreme Court of North Dakota.

Feb. 6, 1996.

Thomas J. Gaughan (argued), City Prosecutor, Fargo, for plaintiff and appellee.

L. Patrick O'Day (argued), Fargo, for defendant and appellant.

MESCHKE, Justice.

John B. Brennan appealed his conviction of disorderly conduct, urging that he was punished for political speech. Like the trial court, we conclude that Brennan's "conduct in encroaching and invading [someone's] personal zone of privacy and waving his hands" close to that person was "threatening behavior and ... physically offensive," and thus not protected by the Free Speech Clause. Therefore, we affirm Brennan's conviction.

Susan Charon was assistant administrator of Fargo Women's Health Organization, a clinic that performed abortions and was frequently targeted by protestors. Early one day, Charon parked her car on the street across from the Fargo post office and went inside. After posting some mail, she left the building. As she crossed the street toward her car, she saw Brennan coming up the street on a bicycle. Charon recognized Brennan as a frequent protestor at the clinic, and "started walking to [her] car really fast."

Brennan cycled past, saw her, and left his bike to approach her on foot. As Charon reached her car, she testified, Brennan came "screaming at me and his arms were flailing and his face was just like popping out." "He was very close to me, I would say a foot to a foot and a half, maybe two at the very most," Charon remembered. She described Brennan's actions:

A. He was screaming at me. He was flailing his arms. His face was just really angry and, like, his eyes were popping out and his veins were popping out and his face was just as red as he could be and he was screaming at me, just screaming at me, "You're our No. 2 killer. I suppose I can't talk to you anymore either," .... I was very alarmed.

Q. And scared?

A. Yes.

Q. And was his physical conduct threatening?

A. Yes, it was. I thought he was going to hit me for a minute. It was just—it was like all he could do, you know.

Q. And during the—this event you say he was uttering comments or screaming?

A. He wasn't uttering them. He was screaming at the top of his lungs.

Brennan did not actually touch her or her car, Charon clarified. She testified she then drove back to work, where she "was just very shaky and upset and just had a very hard day the rest of the day."

On cross-examination, Charon agreed Brennan did not push or touch her, threaten to swing at her, or actually swing at her. She also agreed Brennan did not use profanity, threaten her verbally, or hinder her from driving away. On redirect, Charon added that "he was trying just very hard to control his arms and so he wouldn't touch me when

he was flailing them like this (indicating)," and "I thought he was going to hit me. He didn't hit me. I thought he was going to for a minute." She felt "scared to death of him" and was "alarmed."

Because she "had seen his behavior before at the clinic," Charon agreed on recross-examination that she was frightened before Brennan even saw her. Charon testified his expression and "his screaming alarmed me. It's not normal to walk down the street and have people start screaming at you like that."

Brennan testified that he had "been engaged primarily in picketing at the abortion clinic ... for the last four years," and at the post office, he "noticed [Charon] out of the corner of [his] eye." "I got off the bike and I started hollering at her" to "denounce what she does." He testified he got as close as "[m]aybe five feet ... about the time the car door was opening and she was getting in." He agreed that "all the time that [he was] yelling [he was] approaching her." He denied threatening her with a closed fist, but agreed he waved his arms, gesturing in a way that "took his hands from his side, [and] threw them outward with his palms extended away from his body."

After Charon complained, the City charged Brennan with violating Fargo Ordinance 10–0301 that defines various activities that constitute the crime of disorderly conduct, including:

A person is guilty of disorderly conduct if, with intent to harass, annoy, or alarm another person or in reckless disregard of the fact that another person is harassed, annoyed, or alarmed by his behavior, he:

.    .    .    .    .

8. Creates a hazardous, physically offensive, or seriously alarming condition by any act which serves no legitimate purpose.

The complaint charged Brennan with violating subsection 8 when "he created a hazardous, physically offensive, or seriously alarming condition by screaming very loudly at

Susan Charon," with the "intent to harass, annoy, or alarm [her] or in reckless disregard of the fact that [she was] harassed, annoyed, or alarmed by his behavior."

Brennan moved to dismiss the charge, claiming the ordinance was facially unconstitutional for overbreadth and vagueness, the complaint did not state a violation of law, and it was "not criminal conduct to hurt someone's feelings." The then assigned trial judge denied dismissal.

Brennan changed attorneys, amended his motion to dismiss, and renewed it, claiming the charge was made without probable cause, and the ordinance did not constitutionally prohibit his conduct. The trial court again held the ordinance was not facially unconstitutional, but ruled it did not have "sufficient facts to determine whether or not [Ordinance 10–0301(8) ] is unconstitutional as applied."

After a non-jury trial, the trial court found:

There was a confrontation that took place. It was primarily a verbal confrontation. The issue as to how close Mr. Brennan was to Mrs. Charon is relevant. He was, in Mrs. Charon's view, two feet; in Mr. Brennan's view, five feet.... [T]he Court specifically finds[ ] that the distance was something less than five feet and probably something—not probably but something greater than two feet. In any event it was within that zone of personal privacy that every person expects to be respected when they're out on the street.

The court reasoned:

Mrs. Charon was a private citizen who was engaged in a lawful business, a lawful business that Mr. Brennan finds offensive and many people find offensive but nonetheless under our law [is] a lawful business.... I think that her expectations were different than the officer in [City of Bismarck v. Schoppert, 469 N.W.2d 808 (N.D.1991) ].

The court further found: [1]

Mr. Brennan's conduct in encroaching and invading that personal zone of privacy and

---

1. "In a case tried without a jury, the court shall make a general finding of guilty or not guilty." NDRCrimP 23(d). The Explanatory Note says this rule differs from the Federal Rule "in that it requires only a finding of guilty or not guilty," while the Federal one says, "In a case tried without a jury the court shall make a general

waving his hands constitutes an implied threat and it is a threatening behavior and it is physically offensive.

The court convicted Brennan of disorderly conduct.

The trial court sentenced Brennan to thirty days in jail, with all but five days suspended for one year of unsupervised probation, conditioned upon Brennan staying at least ten feet away from Charon. Brennan appealed.

On appeal, Brennan concedes his actions "may have been hostile and unpleasant" and "disagreeable" to Charon. He acknowledges "the trial Court based its holding upon [his] conduct and manner," but he urges "[h]is actions were not directed physically at Mrs. Charon nor were they a threat" because he did not touch her, "did not touch her car, hinder her from getting into her car ... or ... from driving away," nor did he "push her, use profanity, or verbally threaten her." While conceding the "testimony was conflicting as to whether [his] fists were closed," Brennan insists his own testimony "that he moved his arms to emphasize his point" compels the conclusion that his "actions in moving his arms up and down [were] intertwined with his speech and used to emphasize his speech," rather than being aggressive and threatening. Brennan argues that Fargo's disorderly-conduct ordinance was unconstitutionally applied to punish him for protected expression because his speech was not lewd or obscene, did not include "fighting words," and was only "disagreeable." Thus, Brennan urges there was insufficient evidence to warrant his conviction.

The sufficiency of the evidence for a criminal conviction is generally reviewed in the light most favorable to the verdict. *Schoppert*, 469 N.W.2d at 813. We look for competent and substantial evidence that would permit the jury to reasonably find that each element of the offense had been proven beyond a reasonable doubt. *Id.* at 812. We do not reweigh conflicting evidence or the credibility of witnesses, but only consider whether substantial evidence warranted the conviction. *Id.*

Still, review under the First Amendment must be cautious. When Free Speech arguments are made, the reviewing court must independently scrutinize the record to see if the charged conduct is protected. *Houston v. Hill*, 482 U.S. 451, 458 n. 6, 107 S.Ct. 2502, 2507 n. 6, 96 L.Ed.2d 398 (1987) (citing *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 915 n. 50, 102 S.Ct. 3409, 3427 n. 50, 73 L.Ed.2d 1215 (1982)). As *Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston*, —— U.S. ——, ——, 115 S.Ct. 2338, 2344, 132 L.Ed.2d 487 (1995) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 285, 84 S.Ct. 710, 729, 11 L.Ed.2d 686 (1964)), recently emphasized, a reviewing court has a constitutional duty to independently examine the record as a whole to assure that the " 'judgment does not constitute a forbidden intrusion on the field of free expression.' "

Brennan's expressions were entitled to protection, the City concedes, but it argues that he could not couple his words with physically offensive conduct. Even though Bren-

---

finding and shall in addition upon request find the facts specially...."

Since NDRCrimP 23(d) was adopted, FRCrimP 23(c) has been changed to read: "In a case tried without a jury the court shall make a general finding and shall in addition, on request made before the general finding, find the facts specially." The Advisory Committee's Note with this 1977 amendment explained:

Subdivision (c) is changed to make clear the deadline for making a request for findings of fact and to provide that findings may be oral. The oral findings, of course, become a part of the record, as findings of fact are essential to proper appellate review on a conviction resulting from a nonjury trial. *United States v. Livingston*, 459 F.2d 797 (3d Cir.1972).

*Federal Criminal Code and Rules* 93 (West 1995). This federal commentary suggests special findings can be useful for appellate review of a nonjury conviction.

We do not read NDRCrimP 23(d) to prevent a trial court from making special findings with a general verdict when deciding a criminal case without a jury. Rather, our rule simply does not mandate special findings in that case. *Compare* NDRCrimP 12(e) ("If factual issues are involved in determining a motion, the court shall state its essential findings on the record."). Special findings often aid appellate review, though, and are important in a Free Speech case like this.

nan's speech had a legitimate political purpose, the City insists his physically offensive conduct did not.

From the "no legitimate purpose" language in the ordinance, Brennan argues the "City has failed to show that [his] actions lacked a legitimate purpose." Brennan insists his physical actions also "had a legitimate and constitutionally protected purpose of communicating his political message."

■ We agree with Brennan that his verbal expressions had a legitimate and protected purpose. However, while his message was protected, how he physically delivered it was not. We conclude the trial court reasonably found from the evidence that Brennan alarmed Charon by intentionally or recklessly threatening behavior that was so physically intimidating that it reasonably alarmed her. Thus, Brennan's physically offensive conduct supports his conviction. To protect public order and safety on its streets, the City can constitutionally prohibit physically alarming behavior that people reasonably find threatening.

■ While a public street is a traditional public forum, a reasonable degree of physical separation on a street can be constitutionally imposed as a valid regulation of communicative behavior. This is best illustrated by the greater degree of physical separation constitutionally allowed for injunctions limiting protest activities on public streets. The United States Supreme Court recently agreed with the Florida Supreme Court that "[t]he State ... has a strong interest in ensuring the public safety and order, in promoting the free flow of traffic on public streets and sidewalks, and in protecting the property rights of all its citizens." *Madsen v. Women's Health Ctr., Inc.,* — U.S. —, —, 114 S.Ct. 2516, 2526, 129 L.Ed.2d 593 (1994). This predicate for regulation of conduct accompanying communication has long been understood: "When clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears, the power of the State to prevent or punish is obvious." *Feiner v. New York,* 340 U.S. 315, 320, 71 S.Ct. 303, 306, 95 L.Ed. 295 (1951) (citing *Cantwell v. Connecticut,* 310 U.S. 296, 308, 60 S.Ct. 900, 905, 84 L.Ed. 1213 (1940)). In *Madsen,* the Supreme Court partially upheld the constitutionality of an injunction prohibiting antiabortion protestors from demonstrating in certain places and in various ways outside an abortion clinic. *Madsen* invalidated several restraints against demonstrating within 300 feet of the clinic and of staff residences that were insufficiently tailored to justify restriction of protestors' First Amendment freedom, but approved, as consistent with the First Amendment, exclusion of the protestors from a 36–foot buffer zone on a public street.

"When an injunction is based on a record of force, trespass and intimidation, the justification for the injunction is the method of communicating, not the motivating idea," we too explained in a similar case. *Fargo Women's Health Org., Inc. v. Lambs of Christ,* 488 N.W.2d 401, 408 (N.D.1992). *Madsen,* — U.S. at —, 114 S.Ct. at 2524, announced that injunctions "require a somewhat more stringent application of general First Amendment principles" than do ordinances that "represent a legislative choice regarding the promotion of particular societal interests." Clearly, application of an injunction is more rigorously reviewed than is application of a general law.

■ The application of disorderly conduct laws to expressive activities must respect "motivating ideas," but those laws can regulate an intimidating or threatening "method of communicating." The First Amendment protects a speaker's right to offer "sidewalk counseling" to passersby, but "[t]hat protection ... does not encompass attempts to abuse an unreceptive or captive audience ...," Justice Stevens explained in his separate opinion, concurring and dissenting, in *Madsen* at —, 114 S.Ct. at 2533. By analogy, if someone reasonably believes she may be hit by a sign waved in her face, the fact that the sign displays a protected message does not justify the threatening behavior. The First Amendment does not permit a protestor to physically intimidate anyone with intentional or reckless conduct, even in a public street.

"[T]he right to be let alone" is "the most comprehensive of rights and the right most valued" by civilized persons. *Olmstead v. United States,* 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting). A reluctant listener has a significant privacy interest under the First Amendment. *Cohen v. California,* 403 U.S. 15, 21, 91 S.Ct. 1780, 1786, 29 L.Ed.2d 284 (1971) ("The ability of government, consonant with the Constitution, to shut off discourse solely to protect others from hearing it is ... dependent upon a showing that substantial privacy interests are being invaded in an essentially intolerable manner."); *see also International Soc'y for Krishna Consciousness, Inc. v. Lee,* 505 U.S. 672, 683, 112 S.Ct. 2701, 2708, 120 L.Ed.2d 541 (1992) ("face-to-face solicitation presents risks of duress that are an appropriate target of regulation"). There is no constitutional right to aggressively confront an unwilling listener in an intimidating manner.

Despite Brennan's claim of protected physical conduct, we believe that his "screaming" delivery, his angrily waving arms and hands, and his alarming behavior in close physical proximity to Charon, invading her "personal zone" within two to five feet, were reasonably found to be threatening and physically offensive. *See Svedberg v. Stamness,* 525 N.W.2d 678, 684 (N.D.1994) ("taunts, threats including a threat to kill," and other harassing conduct were "unprotected by the First Amendment"); *City of Mandan v. Hoesel,* 497 N.W.2d 434, 436 (N.D.Ct.App.1993) ("Striking out or attempting to hit someone is not protected expression, but rather is physical conduct that can be the basis of a disorderly conduct conviction."); *City of Bismarck v. Nassif,* 449 N.W.2d 789, 791–94 (N.D.1989) (affirming sufficiency of evidence for disorderly conduct where defendant was "upset, shouting, loud, and aggressive" and threatening "to get his shotgun and 'blow you bastards away' "); *City of Beach v. Kryzsko,* 434 N.W.2d 580 (N.D.Ct.App.1989) (accused who "screamed, hollered, [and] swore" at citizen, and who swore and swung at police officer guilty of disorderly conduct). When a speaker forces his physical presence closely and directly upon a reluctant listener to increase the emotional impact of the message, that constitutionally justifies regulation when the behavior can be reasonably considered intimidating and threatening.

We conclude Brennan's criminal conviction in this case is reasonably supported by substantial evidence and is not "a forbidden intrusion on the field of free expression." Therefore, we affirm his conviction.

VANDE WALLE, C.J., and
SANDSTROM and NEUMANN, JJ., and
JAMES H. O'KEEFE, Surrogate Judge,
concur.

JAMES H. O'KEEFE, Surrogate Judge, sitting in place of LEVINE, J., disqualified.

VANDE WALLE, Chief Justice, concurring specially.

I agree Brennan's actions "were reasonably found to be threatening and physically offensive." Those actions rather than Susan Charon's expectations, distinguish *City of Bismarck v. Schoppert,* 469 N.W.2d 808 (N.D.1991). *See Schoppert* at 814 (VandeWalle, J., concurring specially). I concur in the analysis of the majority opinion.