**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Clarence BRANDNER, Elmer Brandner, and Robert Brandner, Defendants and Appellants.**

Criminal No. 950361.

Supreme Court of North Dakota.

June 27, 1996.

Rehearing Denied July 18, 1996.

Francis C. Rohrich (argued), State's Attorney, Linton, for plaintiff and appellee.

Donavin L. Grenz (argued), Linton, for defendants and appellants.

MESCHKE, Justice.

Clarence, Elmer and Robert Brandner appeal from criminal convictions of unlawful possession of fishtraps. We affirm.

On April 28, 1995, Wardens Mark Pollert and Paul Freeman of the North Dakota Game and Fish Department were patrolling Beaver Creek in Emmons County by canoe. Wardens Ronald Maier and Richard Knapp accompanied them by vehicle on nearby roads and communicated with them by radio. Near 3:30 p.m. that day, Pollert and Freeman discovered four illegal fishtraps. They first spotted a fishtrap connected by a rope to a large fence post that had been driven into the mud near the water. Four ropes were found leading into the water and securing the four fishtraps. The wardens could tell that farm work had been done recently in an area next to the fishtraps. In the fishtraps, the wardens found 26 walleye ranging from one to six pounds.

The submerged illegal fishtraps were found at a point where Beaver Creek runs through farmstead property that the Brandners' deceased father, Anton, had placed in trust for all of his children. Along with other owned and leased farmland, the three Brandner brothers exercise primary control over the trust property where the fishtraps were found.

Anton's former farmstead includes a two-story house and numerous farm buildings, corrals, hay stacks and fences. Although no one presently lives on the farmstead, the Brandners use the various sheds and buildings located there, and use those corrals and feed lots for their cattle operation. The farmstead is enclosed by a barbed wire fence, and only one road leads into the property. Robert lives nearly three miles from the farmstead. Clarence and Elmer live in two homes in a shared yard two-tenths of one mile from the farmstead, and the location of the fishtraps was viewable from both homes.

After learning of the fishtraps by radio, Maier and Knapp tried to find one of the Brandners. They stopped Clarence as he was driving a tractor to his home, told him that a boat patrol had found four illegal fishtraps in the creek, and asked permission to take them. Clarence gave them permission and denied knowing anything about the fishtraps. Less than five minutes after the wardens arrived by truck at the farmstead to load the fishtraps, Robert returned to the farmstead with a load of fertilizer. He asked the wardens what they were doing on the property and who had given them permission to be there. Knapp told Robert that Clarence had given them permission. The Brandners were later charged with violating NDCC 20.1–06–04 by possession of illegal fishtraps.

Following a trial without a jury, the court found the Brandner brothers guilty as charged, sentenced each to two days in jail suspended for two years on condition that each violate no laws, ordered that each forfeit his fishing privileges for two years, and ordered that the fishtraps be forfeited to the Game and Fish Department. The Brandners appealed.

I

The Brandners argue that the trial court committed reversible error in refusing to al-

low them to call and question a witness who they claim would have corroborated Clarence's testimony about the work habits of the Brandners and about the ability of other people to access the farmstead while the Brandners were working. The prosecutor objected because the defense had not disclosed this witness until approximately two and one-half hours before trial began. The trial court said it would allow the witness to testify if he was "the only source" of the information, but would not allow him to testify if the information could be obtained from another source. After defense counsel admitted that some of the testimony would be the same as Clarence's testimony, the trial court refused to allow the witness to testify, reasoning his testimony would be "cumulative."

The Brandners claim that the additional witness should have been allowed to testify because the trial court had no right to assume all of his testimony would be cumulative and because, even if it would be, they were entitled to have an accused's testimony corroborated by an unbiased witness. We disagree.

 A trial court has broad discretion on evidentiary matters, and we will not overturn its admission or exclusion of evidence on appeal unless that discretion has been abused. *State v. Trotter,* 524 N.W.2d 601, 602 (N.D.1994). Furthermore, under NDREv 103(a), error may not be predicated on a ruling that admits or excludes evidence unless a substantial right of the party is affected. *See also* NDRCrimP 52(a). By definition, cumulative testimony "would not make a significant contribution to proof of a fact." *State v. Schindele,* 540 N.W.2d 139, 142 (N.D.1995). While cumulative testimony may sometimes strengthen the weight and credibility of a defendant's testimony, *see State v. Wilson,* 466 N.W.2d 101, 103 (N.D. 1991), a trial court does not necessarily abuse its discretion by excluding evidence of this nature. *See Trotter,* 524 N.W.2d at 602–603. Here, any prejudicial effect from the exclusion of the cumulative evidence was minimal because this was a bench trial rather than a jury trial. Also, although the Brandners suggest the witness's testimony may not

have been entirely cumulative, they did not make an offer of proof under NDREv 103(a)(2) on how that testimony would have differed from Clarence's testimony.

We conclude that the trial court did not abuse its discretion in refusing to allow the additional witness to testify, and that the absence of the witness's testimony did not affect the Brandners' substantial rights.

## II

The Brandners mainly argue that the evidence was insufficient to convict them. They specifically argue that the trial court's written findings and conclusions were incomplete and erroneous.

 For a criminal trial by the court without a jury, our standard of review is the same as for a trial by jury. *State v. Johnson,* 425 N.W.2d 903, 906 (N.D.1988). In reviewing the sufficiency of the evidence, we do not weigh conflicting evidence nor judge the credibility of witnesses; instead, we look only to the reasonable inferences from the evidence most favorable to the verdict to see if there is substantial evidence that warrants the conviction. *Id.* Although a finding of guilt may be based solely on circumstantial evidence, that evidence must be probative enough to establish guilt beyond a reasonable doubt. *City of Wahpeton v. Wilkie,* 477 N.W.2d 215, 217 (N.D.1991). As we explained in *State v. Hill,* 477 N.W.2d 825, 826 (N.D.1991), a verdict based on circumstantial evidence still has the same presumption of correctness as other verdicts, and we will not disturb it on appeal unless it is unwarranted.

Illegal possession of seines, setlines, and fishtraps is prohibited:

No person, except as provided in sections 20.1–06–05 and 20.1–06–06, may set, use, or have in that person's possession, or transport other than by public carrier, any setnets, seines, setlines, or fishtraps. Violators are deemed to be in possession of a public nuisance, and the director, any bonded game warden, or any peace officer shall, without warrant or process, seize the items and hold them subject to the order of a court of competent jurisdiction.

NDCC 20.1–06–04. For NDCC Title 20.1 on "Game, Fish, Predators, and Boating," NDCC 20.1–01–02(27) defines "possession" as "control, actual possession, and constructive possession of the article or thing specified."

Apparently relying on Black's Law Dictionary, at p. 1325 (Rev. 4th ed.1968), the trial court's written findings used this "constructive possession" definition:

> Possession not actual but assumed to exist, where one claims to hold by virtue of some title, without having the actual occupancy, as, where the owner of a tract of land, regularly laid out, is in possession of a part, he is constructively in possession of the whole.

Usually, for a criminal case tried without a jury in North Dakota, a trial court need make only a general finding of guilty or not guilty. *See* NDRCrimP 23(d); *State v. Ennis,* 464 N.W.2d 378, 384 (N.D.1990). But "[w]e do not read NDRCrimP 23(d) to prevent a trial court from making special findings with a general verdict when deciding a criminal case without a jury." *City of Fargo v. Brennan,* 543 N.W.2d 240, 243 n. 1 (N.D. 1996). As the trial court's specific findings and conclusions do here, "[s]pecial findings often aid appellate review. . . ." *Id.*

The trial court found that for many years the Brandners physically possessed, occupied and managed the farmstead where the fishtraps were located. The court found that the traps were "of substantial size, one estimated at six feet in length and three feet in diameter . . ., a second . . . approximately four feet in length and some two and a half feet in diameter. . . ." The court found the other traps "were equally large and capable of trapping and retaining substantial numbers of fish," and that the anchor posts and attached ropes leading to the submerged traps "were readily visible to the unaided eye and were located upon the bank of Beaver Creek at a point immediately adjacent to the common work area of the defendants wherein they routinely maintain livestock and other farming activities."

From the references to constructive possession, the Brandners argue that the trial court used an overly broad definition of "con-structive possession" that made them guilty of possession by merely owning and controlling the land where the illegal fishtraps were located even though they had no knowledge of their existence. In effect, they argue the trial court improperly treated possession of illegal fishtraps under NDCC 20.1–06–04 as a strict liability offense.

■ Because no mental state for culpability is required by NDCC 20.1–06–04, and because NDCC 20.1–01–02(27) specifically includes the concept of constructive possession within the meaning of possession for this crime, we conclude that possession of illegal fishtraps under NDCC 20.1–06–04 is a strict liability offense. *See In Interest of K.S.,* 500 N.W.2d 603, 606–607 (N.D.1993). Even so, as the Note, *Constructive Possession of Controlled Substances: A North Dakota Look at a Nationwide Problem,* 68 N.D.L.Rev. 981, 997 (1992), suggests, this court has revised its once "rigid adherence" to the strict-liability standard for possession of contraband.

For example, in *State v. Michlitsch,* 438 N.W.2d 175, 178 (N.D.1989), we recognized some difficulty in sustaining the constitutionality of the then strict-liability offense of possession of a controlled substance when challenged by someone who possessed the controlled substance unwittingly. To avoid a possible constitutional infirmity in the statute, we therefore held that an accused's unwitting or unknowing possession of the controlled substance is an affirmative defense to a charge of possession. *Id.* We explained the accused had the burden of proving the affirmative defense by a preponderance of the evidence, and the State was not required to prove the nonexistence of the defense beyond a reasonable doubt. *Id.; see also State v. Rodriguez,* 454 N.W.2d 726, 731 (N.D.1990). We see no reason why the *Michlitsch*-type, affirmative defense of unwitting and unknowing possession should not apply to a prosecution for possession of illegal fishtraps.

Yet, we reject the Brandners' broad assertion that the trial court found them guilty merely because the illegal fishtraps were discovered on property they owned and controlled. Nothing in the court's written findings and conclusions implies that the court

would have found the Brandners guilty even if it were convinced the Brandners had no knowledge of the illegal fishtraps. Indeed, the trial court made a *Michlitsch*-type analysis:

> The defendants herein have attempted to offer evidence to suggest that persons other than the defendants may have some how or other sneaked on to said real estate and located said fish nets and fish traps upon the defendants' property. Other than the defendants' suggestion thereof, there is no evidence whatsoever to support the defendants' argument and theory. The substantial size of the fish traps and fish nets, the anchoring devices employed for the same, the location of such fish traps and fish nets, and the frequent and common use of the area immediately adjacent thereto, is wholly ... [in]consistent with any suggestion that the fish nets and fish traps located upon property possessed, occupied and managed by the defendants herein were owned, managed, and set by anyone other than the defendants herein.

The trial court clearly inferred from the circumstantial evidence not only that the Brandners knew of the illegal fishtraps, but also that they had put them in Beaver Creek. From our review of the record, we conclude that the trial court had substantial evidence to find the Brandners actually possessed the illegal fishtraps.

 The evidence shows that the traps were not well concealed, that the area was visible from the homes of Clarence and Elmer, and that there was only one road leading into the farmstead. The fishtraps were large enough to need more than one person to place them into or to remove them from the water. Although the land was not posted against trespassing, the evidence shows that access to the property was not as open to other people as the Brandners claimed. Indeed, five minutes after the wardens arrived at the farmstead by truck, Robert came "screaming up" in his vehicle and asked them who had given them permission to be there.

The Brandners kept cattle on the farmstead, and calving season was ongoing when the fishtraps were found. There was evidence that farm work had been done there recently, and that a person farming there would have seen the fishtraps. Clarence and Elmer lived close to the farmstead, and one of the Brandner brothers was frequently seen driving in and out of the farmstead. When asked how he knew the Brandners possessed the fishtraps rather than other people who may have had access to the property, Warden Maier explained, "[w]e were right towards the end of the calving season, or right in the middle of it, and there was cows around there, there's some farming activities and they're there virtually 24 hours a day, they live there." While Clarence testified that the Brandners had no knowledge of the fishtraps, he admitted seeing, when he was at the farmstead, an anchor post that he thought was a "beaver's stake."

We conclude there is substantial circumstantial evidence for the trial court's finding that the Brandners violated NDCC 20.1–06–04 by possessing the illegal fishtraps.

We affirm the convictions.

VANDE WALLE, C.J., and SANDSTROM, NEUMANN and MARING, JJ., concur.