2010 ND 93

In the Matter of the ESTATE OF Oline LOOMER, Deceased.

LeRoy L. Loomer, Co–Personal Representative of the Estate of Oline Loomer, Deceased, Appellant

v.

Donald W. Loomer and Orville C. Loomer, Co–Personal Representatives of the Estate of Oline Loomer, Deceased, Appellees.

No. 20090175.

Supreme Court of North Dakota.

May 14, 2010.

Harry Malcolm Pippin, Williston, N.D., for appellant.

Malcolm H. Brown, Bismarck, N.D., for appellees.

SANDSTROM, Justice.

[¶ 1] LeRoy Loomer appeals from a probate judgment confirming the partition of land owned by the decedent, Oline Loomer, and the distribution of the land to her three children, LeRoy, Orville, and Donald Loomer. We conclude the court's partition decision is not clearly erroneous and the claimed misconduct by a referee appointed to assist in the partition of the land does not require reversal. We affirm.

I

[¶ 2] Oline Loomer died in 2002 without executing a will. She was survived by her three adult children, LeRoy, Orville, and Donald Loomer, who were appointed personal representatives of an estate that included about 2,160 acres of ranch and farm land in McKenzie County. The three sons disagreed about the distribution of the surface interest of their mother's land and petitioned under N.D.C.C. § 30.1–20–11 to partition the land. LeRoy Loomer had lived on the family ranch since 1972 and had been involved in a ranching and farming arrangement with his parents since then. According to LeRoy Loomer, he had separately purchased 990 acres of land in the area, which he intends to combine with his share of his mother's land and continue his ranching operation. He asserts his mother's land should be partitioned to give his brothers cropland and to give him pasture land so he can continue his ranching operation. Donald and Orville Loomer left the family ranch and farm in the 1960s. They claim LeRoy Loomer has received a "free ride" under the arrangement with their parents for many years, and absent a devise in a will, Oline Loomer's estate has no obligation to partition the land to ensure he can continue his ranching operation. Donald and Orville Loomer claim they want some of the pasture land "to commercially hunt their portion of the lands as a revenue generating business."

[¶ 3] At a February 2004 hearing, the three sons presented conflicting proposals for partitioning the surface interest of their mother's land. The district court ordered the sons to decide which issues could be decided by stipulation and which issues required further hearing. The three sons thereafter stipulated for appointment of three referees, Roger Cym-

baluk, Greg Hennessy, and Craig McIvor, to assist in the sale or partition of the land under N.D.C.C. § 32–16–12. McIvor is a certified appraiser from Williston who appeared at the February 2004 hearing as a witness for LeRoy Loomer. Cymbaluk is also a certified appraiser from Williston, and Hennessy is an attorney from Williston. The parties' stipulation provided that "[u]pon receipt of the report from the three referees, the Court shall decide if partition can be made without great prejudice to the estate's beneficiaries or if a sale will be necessary." The court thereafter ordered the referees "to make a report of their proceedings, specifying the manner in which they executed their trust, and describing the property divided, if possible and the share allotted to each party with a particular description of each share."

[¶ 4] Cymbaluk and McIvor submitted a joint report to the court, which divided the land into three tracts. Tract one consisted of 136 acres of cropland, 5 acres for the farmstead, 643.5 acres of pasture, and 15.5 acres of wasteland for a total of 800 acres valued at $179,000. Tract two consisted of 369.5 acres of cropland and 350.5 acres of pasture for a total of 720 acres valued at $180,000. Tract three consisted of 566.9 acres of cropland, 66.8 acres of pasture, and 6.3 acres of wasteland for a total of 640 acres valued at $210,500. The joint report proposed to give LeRoy Loomer tract one and identified the two other tracts of land for Donald and Orville Loomer without specifically designating either tract for either brother. The joint report said there was adequate cash in the estate to equalize the difference in land values and said each tract of land was accessible by a county road, the proposed division minimized fencing problems, and "[b]oth parties would have pasture and some water and the cropland could be utilized for upland game if the owners want a commercial fee hunting business."

[¶ 5] Hennessy submitted a separate report to the court, which stated LeRoy Loomer had no legal or equitable right to improve his position over his brothers because Oline Loomer died without a will. Hennessy's report said LeRoy Loomer had rejected a leaseback of Donald and Orville Loomer's two-thirds interest in the land as uneconomical and terminable at will. Hennessy's report divided the land into three 720 acre tracts. Tract one consisted of 371.5 acres of cropland and 348.5 acres of pasture valued at $215,000, tract two consisted of 357 acres of cropland and 363 acres of pasture valued at $175,000, and tract three consisted of 353.5 acres of cropland and 366.5 acres of pasture valued at $177,000. Hennessy's report proposed distribution of tract one to LeRoy Loomer, tract two to Orville Loomer, and tract three to Donald Loomer.

[¶ 6] Orville and Donald Loomer asked the court to confirm Hennessy's report and objected to the joint report, arguing the joint report failed to allot to each of the three brothers their separate and distinct shares of the land. LeRoy Loomer asked the court to reject Hennessy's report and to confirm the joint report, arguing the joint report was equitable under the circumstances because it would allow him to continue his ranching livelihood. LeRoy Loomer argued, "[i]f the Court determines that the acreage between Orville and Donald needs to be delineated, so be it," but "that should not effect [sic] the land that Referees McIvor and Cymbaluk felt was equitable for LeRoy to be provided with."

[¶ 7] The district court adopted Hennessy's report and ordered partition of the land according to that report. The court said the joint report had a "serious flaw," because it proposed to allocate two tracts of land to Donald and Orville Loomer as

tenants in common and they had not agreed to that ownership arrangement.

[¶ 8] LeRoy Loomer requested reconsideration, claiming the "serious flaw" in the joint report could be corrected easily by having the two referees identify separate tracts of land for Donald and Orville Loomer. After a hearing, the court denied LeRoy Loomer's motion for reconsideration, stating the report adopted by the court "took into consideration sentiments, economics, viability, living arrangements of the parties, the operations of the parties. And completed the partition without great prejudice to any. There may have been other preferred options that each of the parties would have liked had they had the only say, but they did not."

[¶ 9] LeRoy Loomer subsequently moved to vacate the partition judgment, arguing referees Cymbaluk and McIvor did not intend for Donald and Orville Loomer to own their two tracts together and the two referees intended for Donald and Orville Loomer to choose the tract of land they wanted. LeRoy Loomer also claimed Hennessy's report was based on Hennessy's improper ex parte communications with Orville and Donald Loomer. The court denied LeRoy Loomer's request to vacate the partition judgment.

[¶ 10] After further proceedings to distribute other property in the estate, LeRoy Loomer again moved to vacate the partition decision. The court denied LeRoy Loomer's motion, reiterating the partition set forth in Hennessy's report constituted the court's order, because it provided for equal acreage, equal value, contiguous property, and appropriate water and good access for each owner, it granted the homestead to LeRoy Loomer, and it was preferred by a majority of the parties. A final judgment for distribution of Oline Loomer's estate was subsequently entered.

[¶ 11] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 27–05–06, 30.1–02–02, 30.1–20–11, and 32–16–15. The appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. §§ 28–27–01 and 30.1–02–06.1.

II

■ [¶ 12] LeRoy Loomer claims the parties agreed they would have no ex parte communications with the three referees. He argues referee Hennessy acted as an advocate for Donald and Orville Loomer and had improper ex parte contacts with them, which completely vitiated the referee process and requires reversal of the partition decision. Orville and Donald Loomer respond the record does not support an agreement between the parties regarding ex parte contacts with the referees and does not support misconduct by Hennessy.

[¶ 13] LeRoy Loomer cites some authorities for the principle that partiality, bias, or prejudice by referees in partition actions may justify setting aside a report if the errors or irregularities seriously affect the parties' rights. *McKenzie v. Miller*, 35 Idaho 354, 206 P. 505 (1922); *Morse v. Morse*, 150 Me. 174, 107 A.2d 496 (1954). *See* 59A Am.Jur.2d *Partition* § 128 (2003). In *McKenzie*, at 506, the Idaho Supreme Court said, "With the exception of [one referee], the referees displayed a lack of decisiveness and a failure to realize the nature and dignity of their position and its function." The court also said one of the parties "had no right to approach [the referees] privately and individually and try to influence their judgment." *Id.* The court did not decide the case on that issue, however, and instead concluded the weight of the evidence established the trial court's partition was unfair and inequitable. *Id.*

In *Morse,* at 499, the court affirmed a partition decision, but said if the "commissioners reached their result through bias or prejudice, or gross error clearly and unmistakably shown, then justice would require the recommittal or setting aside of the report." In *Kennedy v. Kennedy,* 186 Ky. 549, 217 S.W. 891, 892 (1920), the court affirmed a partition decision, stating it did "not attach any importance whatever to the fact that the commissioners, whom [the court] presume[d] to be honorable discreet citizens, visited the home" of one of the parties and had dinner at his house. *See* 59A Am.Jur.2d *Partition* § 129 (2003) ("Disinterestedness of Commissioners"). The authorities cited by LeRoy Loomer do not specifically preclude ex parte contacts with referees appointed to partition land; rather, those authorities review the equities or prejudice of a trial court's ultimate partition decision. *See McKenzie,* at 506; *Morse,* at 499; *Kennedy,* at 892.

[¶ 14] LeRoy Loomer has cited no statutory authority explicitly precluding ex parte contacts with referees in partition actions. *See* N.D.C.C. ch. 32–16. There is nothing in this record, other than an otherwise unsupported affidavit by counsel for LeRoy Loomer, which states the parties agreed they would have no ex parte contacts with the referees pending preparation of their reports. Counsel for Donald and Orville Loomer, however, claim there was no such agreement. The district court specifically stated its order did not preclude ex parte contacts, and the parties' stipulation for appointment of the three referees does not include language prohibiting ex parte contacts with the referees. The court ultimately considered both reports and rendered a partition decision after reviewing both reports. *See* N.D.C.C. § 32–16–15 ("court may confirm, change, modify, or set aside the report of the referees and, if necessary, may appoint new referees"). The district court is the

ultimate decision maker regarding acceptance of the referees' reports, and as we discuss later, LeRoy Loomer has not shown clear error or prejudice by the court's partition decision. On this record, we reject LeRoy Loomer's argument about ex parte contacts and referee misconduct.

### III

■ [¶ 15] LeRoy Loomer argues the district court clearly erred in partitioning the land and in denying his motions to reconsider and to vacate the partition decision. He claims the joint report fairly divided the land so he would have a viable ranching operation without being dependent upon his estranged brothers for the rest of his life. He asserts his brothers' livelihoods were not dependent on the court's partition decision, and he argues the court's decision to adopt Hennessy's report destroyed his lifelong ranching livelihood.

[¶ 16] Under N.D.C.C. § 30.1–20–11, a probate court may partition land under N.D.C.C. ch. 32–16. Section 32–16–01, N.D.C.C., authorizes proceedings to partition property "according to the respective rights of the persons interested therein and for a sale of such property or a part thereof, if it appears that a partition cannot be made without great prejudice to the owners." If the property is situated so that partition cannot be made without great prejudice to the owners, the court may order sale of the property; otherwise, the court must order a partition according to the respective ownership rights of the parties and appoint three referees to partition the property. N.D.C.C. § 32–16–12. "In making the partition, referees must divide the property and allot the several portions thereof to the respective parties, quality and quantity relatively considered, according to the respective rights of the

parties as determined by the court." N.D.C.C. § 32–16–13. "The referees must make a report of their proceedings, specifying therein the manner in which they executed their trust, and describing the property divided and the share allotted to each party with a particular description of each share." N.D.C.C. § 32–16–14. "The court may confirm, change, modify, or set aside the report of the referees and, if necessary, may appoint new referees." N.D.C.C. § 32–16–15.

[¶ 17] "Partition is a matter of right between cotenants." *First Trust Co. v. Mast*, 385 N.W.2d 104, 105 (N.D.1986). "The law favors partition in kind, and there is a presumption that partition in kind should be made unless great prejudice is shown." *Schmidt v. Wittinger*, 2004 ND 189, ¶ 7, 687 N.W.2d 479. Partition is an equitable remedy governed by equitable principles. *Murphy v. Murphy*, 1999 ND 118, ¶ 11, 595 N.W.2d 571; *Green v. Gustafson*, 482 N.W.2d 842, 849 n. 4 (N.D.1992); *Schnell v. Schnell*, 346 N.W.2d 713, 715 (N.D.1984). District courts have "wide judicial discretion in partition actions to 'do equity' and to make a fair and just division of the property or proceeds between the parties," and "great flexibility in fashioning appropriate relief for the parties." *Eastman v. Nelson*, 319 N.W.2d 134, 136 (N.D.1982). In *Schnell*, at 716–21, this Court recognized that all the owners of an interest in land require equal consideration for partition in kind, including consideration of sentimental attachment to the land, the situation of the owners, and the location and character of the land.

[¶ 18] A district court's findings in a partition action will not be reversed on appeal unless clearly erroneous. *Mougey Farms v. Kaspari*, 1998 ND 118, ¶ 33, 579 N.W.2d 583; *Schnell*, 346 N.W.2d at 715. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made." *Higgins v. Trauger*, 2003 ND 3, ¶ 10, 656 N.W.2d 9.

[¶ 19] We are not left with a definite and firm conviction the district court made a mistake in partitioning the land. The court adopted Hennessy's report, which evaluated the partition under factors discussed in *Schnell* and became the court's decision. There is evidence in this record to support the court's decision, and we conclude the court's findings regarding the partition are not clearly erroneous. We therefore affirm the court's partition of the land.

[¶ 20] We review a district court's denial of a motion to vacate or to reconsider a judgment under the abuse-of-discretion standard. *See Vann v. Vann*, 2009 ND 118, ¶ 10, 767 N.W.2d 855; *Hilgers v. Hilgers*, 2004 ND 95, ¶ 18, 679 N.W.2d 447. A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Larson v. Larson*, 2002 ND 196, ¶ 11, 653 N.W.2d 869. We are not persuaded the court's decisions to deny LeRoy Loomer's motions to reconsider and to vacate the partition decision were arbitrary, unreasonable, or unconscionable. The court's stated reasons for denying those motions reflect those decisions were the product of a rational mental process leading to a reasoned determination, and we conclude the court did not abuse its discretion in denying those motions.

IV

[¶ 21] We affirm the judgment.

[¶ 22] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, MARY MUEHLEN MARING, JJ., and EVERETT NELS OLSON, S.J., concur.

[¶ 23] The Honorable EVERETT NELS OLSON, S.J., sitting in place of CROTHERS, J., disqualified.