Filed 10/19/10 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2010 ND 197

Monte Dean Hoggarth, Tonia 

Hoggarth, and on behalf of A.H.

and B.H., Petitioners and Appellees

v.

Mary Elizabeth Kropp, Respondent and Appellant

No. 20090326 

Appeal from the District Court of Stutsman County, Southeast Judicial District, the Honorable Daniel D. Narum, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Sandstrom, Justice.

Patti J. Jensen, 1312 Central Avenue North East, P.O. Box 386, East Grand Forks, Minnesota 56721-0386, for petitioners and appellees.

Robert J. Schultz, 406 Main Avenue, Suite 200, P.O. Box 2686, Fargo, N.D. 58108-2686, for respondent and appellant.

Hoggarth v. Kropp

No. 20090326

Sandstrom, Justice.

[¶1] Mary Kropp appeals from a disorderly conduct restraining order prohibiting her from having contact with any member of the Hoggarth family.  We affirm in part, reverse in part, and remand to the district court to establish appropriate distance boundaries and schedules in the order.

I

[¶2] Tonia and Monte Hoggarth petitioned for a disorderly conduct restraining order against Mary Kropp on behalf of themselves and their two minor children in May 2009.  Tonia Hoggarth alleged that Kropp had harassed her and her minor son outside Hoggarth’s workplace and that Kropp had sent disruptive e-mail messages to the family’s e-mail account.  The district court entered a temporary disorderly conduct restraining order against Kropp the following day.

[¶3] A hearing was held in July 2009 on whether to make the restraining order permanent.  Tonia Hoggarth, Monte Hoggarth, and Kropp all testified.  The district court found Monte Hoggarth and Kropp had engaged in an extramarital affair that temporarily ceased, but was later resumed.  The district court then made its findings regarding two key events.

[¶4] First, the court found Kropp confronted Tonia Hoggarth and her minor son in a menacing and threatening manner outside Hoggarth’s workplace in April 2009.  This confrontation occurred immediately after a heated telephone conversation between Monte Hoggarth and Kropp.  As Tonia Hoggarth and her son were walking to her vehicle from the clinic where she works, Kropp unexpectedly emerged from an unfamiliar car and accosted them.  In direct proximity to the Hoggarths, Kropp unleashed a tirade.  She was screaming vulgarities about Monte Hoggarth and the affair while Tonia Hoggarth attempted to get her son away from the scene.  Tonia Hoggarth pleaded with Kropp to leave them alone, since her son was being subjected to the unwelcome outburst.  Kropp returned to her vehicle, where she remained parked behind the Hoggarths, not allowing them to move, before eventually leaving the parking lot.

[¶5] The second key event involved a series of e-mail messages sent by Kropp to the Hoggarth family e-mail account approximately one month after the parking lot encounter.  The district court found at least one of these messages was knowingly sent by Kropp on the birthday of one of the Hoggarth children.  Some of the e-mail messages contained pictures of Monte Hoggarth and Kropp together after the affair was supposed to have ended.  He appeared voluntarily in at least one of the pictures, while Kropp took other pictures of him without his knowledge.  Kropp testified she took these pictures because she thought she “might need [them] someday.”  The district court found Kropp knew the entire family used the e-mail account and knew it was not password-protected.  The court found the purpose of the e-mail messages was to cause the same destruction to the Hoggarth family as Kropp perceived had happened to her family.

[¶6] On the basis of these two incidents, the court entered a permanent order restraining Kropp from contact with the Hoggarth family for 24 months.  The order bars Kropp from all contact with the Hoggarth family and requires her to leave a public place immediately upon recognition that any of the Hoggarths are present.

[¶7] Kropp appealed, but then moved to stay briefing and remand the matter to the district court to reconsider both the imposition of the restraining order and its scope.  We granted Kropp’s motion for remand.  Following a hearing, the district court rejected Kropp’s motions to reconsider and modify the restraining order.  The court concluded no new evidence had been introduced that would justify terminating or modifying the order.

[¶8] Kropp appeals, arguing her statements during the parking lot confrontation and in the e-mail messages sent to the Hoggarths are constitutionally protected free speech and, alternatively, the scope of the restraining order is too broad.

[¶9] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27-05-06.  Kropp’s appeal is timely under N.D.R.App.P. 4(a).  This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. §§ 28-27-01, 28-27-

02.

II

[¶10] Kropp first argues her statements and e-mail messages are constitutionally protected forms of free speech, thus invalidating the grounds for the restraining order.  Section 12.1-31.2-01(1), N.D.C.C., provides that disorderly conduct does not include constitutionally protected activity.  A court imposing a disorderly conduct restraining order must address a respondent’s constitutional claims, because constitutionally protected conduct cannot be a basis for the order.  
See, e.g.
, 
Hutchinson v. Boyle
, 2008 ND 150, ¶ 9, 753 N.W.2d 881 (restraining order reversed because the district court did not adequately address the free speech claim made by the appellant); 
Gullickson v. Kline
, 2004 ND 76, ¶ 20, 678 N.W.2d 138 (restraining order reversed in part because it was unclear whether the court considered appellant’s constitutional claim).

[¶11] The district court reflected its consideration of the constitutional issues in its written conclusions when it stated, “Based upon the court’s findings in regard to the issue of intent, there is no constitutional protection defense that is viable.”  Whether an activity is constitutionally protected is a question of law, subject to full review on appeal.  
State v. Holbach
, 2009 ND 37, ¶ 11, 763 N.W.2d 761.  “When Free Speech arguments are made, the reviewing court must independently scrutinize the record to see if the charged conduct is protected.”  
City of Fargo v. Brennan
, 543 N.W.2d 240, 243 (N.D. 1996).  “[A] reviewing court has a constitutional duty to independently examine the record as a whole to assure that the ‘judgment does not constitute a forbidden intrusion on the field of free expression.’”  
Id.

[¶12] There was conflicting testimony about the parking lot confrontation and the circumstances surrounding the e-mail messages sent by Kropp to the Hoggarth family.  Noting Kropp was “considerably lacking in credibility” and her version of events was “not reasonable,” the district court adopted the version of events presented by the Hoggarths.  The district court assesses the credibility of witnesses and resolves conflicts in the evidence, and reviewing courts do not reweigh the evidence, make independent findings of fact, or substitute their judgment for that of the district court.  “[T]he trial court is in a better position to judge the demeanor and credibility of witnesses and weigh the evidence than we who have only the cold record to review.”  
Ludwig v. Burchill
, 481 N.W.2d 464, 469 (N.D. 1992).

[¶13] In finding the Hoggarths to be more credible, the district court found Tonia Hoggarth’s testimony was “frank” as well as “reasonable and consistent with the testimony of Monte Hoggarth.”  Using the court’s findings of fact, we note the importance of distinguishing between content of speech and disturbing or threatening conduct proscribed by the disorderly conduct statute.  
State v. Bornhoeft
, 2009 ND 138, ¶ 11, 770 N.W.2d 270.  Kropp’s argument focuses on the bare words she spoke in the parking lot and in the e-mail messages she sent to the Hoggarths.  This is an incomplete analysis of the constitutionality of her speech.  “[D]isorderly conduct . . . does not necessarily depend on the particular content of the speech involved, but on the behavior.”  
Id.

[¶14] Kropp’s behavior is similar to that of the defendant in 
Brennan
.  While 
Brennan
 dealt with a criminal conviction, the analysis in that case applies here.  Disorderly conduct is analyzed in the same manner for both civil and criminal cases because the reasonable grounds for a restraining order are synonymous with probable cause for an arrest.  
Wetzel v. Schlenvogt
, 2005 ND 190, ¶ 17, 705 N.W.2d 836.  Brennan contended his actions and statements were constitutionally protected, even if they were, admittedly, “hostile and unpleasant” and “disagreeable” to the other party.  
Brennan
, 543 N.W.2d at 243.  We disagreed, holding Brennan’s accompanying actions stripped his speech of constitutional protection.  
Id.
 at 245.  We specifically noted that Brennan’s “‘screaming’ delivery, his angrily waving arms and hands, and his alarming behavior in close physical proximity to [the other party], invading her ‘personal zone’ within two to five feet, were reasonably found to be threatening and physically offensive.”  
Id.
  The district court found Kropp exhibited all of these actions.  She screamed while flailing her arms.  Her behavior was erratic.  She was within close proximity to Tonia Hoggarth.  She unleashed her tirade directly in front of a minor child.  This behavior was compounded by Kropp’s e-mail, which the district court found was sent to the entire family and timed to cause disruption.

[¶15] Section 12.1-31-01(1)(h), N.D.C.C., provides that a person engages in disorderly conduct when she “[e]ngages in harassing conduct by means of intrusive or unwanted acts, words, or gestures that are intended to adversely affect the safety, security, or privacy of another person.”  Kropp’s actions fit this definition.  In both the parking lot confrontation and her e-mail communications, she acted in a harassing manner and violated the privacy of the Hoggarth family.  These actions form the reasonable basis for a disorderly conduct restraining order.

[¶16] The totality of Kropp’s actions removes the constitutional protection her messages may otherwise have had.  We affirm the permanent imposition of the disorderly conduct restraining order.

III

[¶17] Kropp next argues the scope of the restraining order is too broad and must be modified.  “Generally, the grant of a restraining order is discretionary, and a district court’s decision must be reviewed under an abuse-of-discretion standard.”  
Wetzel
, 2005 ND 190, ¶ 15, 705 N.W.2d 836.  “A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination.”  
Estate of Loomer
, 2010 ND 93, ¶ 20, 782 N.W.2d 648.  We will affirm the district court’s order unless it violates any part of this standard.

[¶18] While we give deference to the district court under the abuse-of-discretion standard, we nonetheless scrutinize a disorderly conduct restraining order to make sure it is narrowly tailored as to time and distance.  As stated in 
Baker v. Mayer
, 2004 ND 105, 680 N.W.2d 261:

We have recognized the ramifications of a disorderly conduct restraining order to the person alleged to have committed disorderly conduct.  A disorderly conduct restraining order significantly restrains a person’s liberty.  It totally restricts the right to be in certain places and partially restricts the right to be in other places because generally the person must not go within a certain number of feet of the victim.  Further, stigma in the community may result due to the nature of the charge.

Id.
 at ¶ 14 (citations omitted).  Logical limits on time and distance must be present in a restraining order to minimize unnecessary harm to the person bound by it.  
Meier v. Said
, 2007 ND 18, ¶ 27, 726 N.W.2d 852.

[¶19] The restraining order provided:

1. The Respondent shall not engage in any disorderly conduct toward any of the Petitioners.

2. The Respondent shall not have any contact with the Petitioners, in any manner.

3. The Respondent shall be absolutely restrained from having telephone contact with the Petitioners, whether directly or indirectly.

4. The Respondent shall be absolutely restrained from having electronic contact with the Petitioners, whether directly or indirectly through any website or email address.

5. The Respondent shall be absolutely restrained from having any contact with the Petitioners at their home and their places of employment and any and all public places.

6. Recognizing that the Respondent may have occasion to be in a public place at the same time as one or more of the [Petitioners] are present, she shall specifically be required to leave any such public place immediately upon her recognizing that one or any of the Petitioners are present.

7. Recognizing that there may be a time within the two year period during which this Order is in effect when the parties’ children are on the same hockey team, the parties, through counsel, may address the issue of the Respondent’s attendance in a separate Stipulation which shall then be submitted to the court.  Should no Stipulation be reached, the court makes no specific finding and this Order shall apply.

[¶20] While the circumstances of this case necessitate the imposition of the restraining order, its terms appear excessively restrictive.  The record reflects certain instances when Kropp would have legitimate reasons for being at the same events as the Hoggarths.  For example, both Kropp’s son and the Hoggarths’ son are hockey players at Jamestown High School.  Rather than establishing a distance requirement allowing both Kropp and the Hoggarths to attend hockey games and other limited events, the restraining order currently requires Kropp to leave the premises immediately upon recognizing that any of the Hoggarths are present.  This immediate exit requirement may prove to be necessary if Kropp later abuses a conditional privilege to be in certain common places.  At this point, however, the restraining order should be structured in a less restrictive way that will balance the protection needs of the Hoggarths and the freedom interests of Kropp.  Establishing distance requirements will balance these interests, with more restrictive terms available should Kropp violate the restraining order.

[¶21] The terms Kropp proposed to modify the restraining order are also unreasonable, because they would fail to adequately protect the Hoggarths.  For example, one of Kropp’s proposed terms would bar her from entering Tonia Hoggarth’s workplace.  Even if Kropp were subject to this restriction, she would be free to repeat the tirade in front of Tonia Hoggarth and her son that served as a basis for the restraining order in the first place.  This confrontation took place in the parking lot, not inside the clinic.  Under Kropp’s proposed terms, nothing would preclude her from waiting outside Tonia Hoggarth’s workplace door and then repeating her same harassing behavior.

[¶22] Kropp also proposed a separate term that would allow her to attend the same church services as the Hoggarths.  While Kropp certainly has a fundamental right to practice her religion, she cannot use that right as an opportunity to menace the Hoggarth family.  The parties in this case will be adequately protected and served only if defined schedules are set for church attendance, so that all can practice their faith without interference.

[¶23] While some of Kropp’s proposed terms are unreasonable, we are convinced the existing restraining order must be modified to permit her more freedom than she is currently allowed.  Kropp must be afforded narrow opportunities to attend common school and public functions that the Hoggarths may also attend.  Any such mutual attendance must be subject to defined boundaries to prevent any interaction between the parties.

IV

[¶24] We affirm the imposition of the disorderly conduct restraining order under N.D.C.C. ch. 12.1-31.2, but remand to the district court to establish specific distance boundaries and schedules to strike a balance between protection for the Hoggarths and freedom for Kropp.

[¶25] Dale V. Sandstrom

Carol Ronning Kapsner

Mary Muehlen Maring

Gerald W. VandeWalle, C.J.

      I concur in the result.

   Daniel J. Crothers