2011 ND 140

**John M. SILBERNAGEL and Tom Silbernagel, Individually and as the Co-Guardians of the person and Co-Conservators of the Estate of John P. Silbernagel, an incapacitated person, Plaintiffs and Appellees**

**v.**

**Stephen SILBERNAGEL, a/k/a Steve Silbernagel; Jane Silbernagel, a/k/a Jane V. Silbernagel, Defendants and Appellants.**

**In the Matter of the Guardianship and Conservatorship of J.P.S., a/k/a J.S.**

**Stephen Silbernagel, a/k/a Steve Silbernagel; Jane Silbernagel, a/k/a Jane V. Silbernagel, Appellants**

**v.**

**John M. Silbernagel and Tom Silbernagel, Individually and as the Co-Guardians of the person and Co-Conservators of the Estate of J.P.S., and incapacitated person, Appellees.**

**In the Matter of the Estate of John P. Silbernagel, Deceased.**

**Stephen Silbernagel, a/k/a Steve Silbernagel; Jane Silbernagel, a/k/a Jane V. Silbernagel, Appellants**

**v.**

**John M. Silbernagel and Tom Silbernagel, Individually and as the Co-Guardians of the person and Co-Conservators of the Estate of John P. Silbernagel, an incapacitated person, Appellees.**

Nos. 20100393, 20100394, 20100395.

Supreme Court of North Dakota.

July 13, 2011.

Donavin L. Grenz, Linton, N.D., for plaintiffs and appellees.

Joseph J. Cichy, Bismarck, N.D., for defendants and appellants.

KAPSNER, Justice.

[¶ 1] Stephen and Jane Silbernagel appeal from a judgment entered upon a motion by John M. and Tom Silbernagel to enforce a prior stipulated judgment in consolidated cases involving the estates of John P. Silbernagel and Marcella Silbernagel. Stephen and Jane Silbernagel assert the purpose of the stipulated judgment has been frustrated by an unexpected claim to land involved in the prior judgment, and they seek to vacate that judgment for a trial on the merits. We conclude the district court did not err in construing the prior stipulated judgment, and we affirm.

## I

[¶ 2] Stephen, Tom, and John M. Silbernagel are sons of John P. Silbernagel, who died in 2003, and grandchildren of Marcella Silbernagel, who died in 1983, but whose estate was not probated or settled. A family dispute arose regarding interests in land in Kidder and Logan counties, which had been owned by Marcella Silbernagel and initially farmed by John P. Silbernagel. Stephen Silbernagel subsequently farmed the land and was named in John P. Silbernagel's will as the beneficiary of his father's interest in the land. In three consolidated cases beginning in 2002 and involving a guardianship and conservatorship for John P. Silbernagel, the probate of his estate, and an action to set aside a conveyance of land by John P. Silbernagel to Stephen Silbernagel, John M. and Tom Silbernagel sued Stephen Silbernagel and his wife, Jane Silbernagel. During October 2004 jury selection in those consolidated cases, the parties reached a settlement agreement, which was read into the record by Stephen and Jane Silbernagel's attorney:

> Okay the agreement is that my clients Steve and Jane Silbernagel will pay to [John M. and Tom Silbernagel] $150,000. There will be a reasonable time given to [Stephen and Jane Silbernagel] to secure the financing for that. In exchange for that [John M. and Tom Silbernagel] will release any and all interests they have in the estate of John P. and the

estate of Marcella to Steve. They will release any and all interests in the FSA payment to Steve. My clients Steve and Jane will pay the debts associated with the administrator of the estate of John P. which includes Malcolm Brown and the personal representative Bill Chaussee, with the exception of $3500 to the nursing home. That will be $3500, the equivalent of or value of will be responsible by [John M. and Tom Silbernagel]. Also, in exchange for that, if a quiet title action is required to clear title on Marcella's property [John M. and Tom Silbernagel] will agree to cooperate with that to the fullest extent necessary that's required. If Jane and Steve should ever elect to sell the property, any of the property, they will give [John M. and Tom Silbernagel] the first option to purchase. And we do believe that the parties should be able to work amongst themselves on dividing some of—of the items belonging to John P. and Lorraine P. The only property specifically discussed is a deer head that will be given to [John M. and Tom Silbernagel]. And everyone will be responsible for their own attorney's fees.

[¶ 3] The settlement agreement was incorporated into an April 29, 2005 judgment and a March 31, 2008 amended judgment. Before entry of the April 2005 judgment, however, John M. and Tom Silbernagel brought a separate breach of contract action against Stephen and Jane Silbernagel, alleging they had breached the settlement agreement and seeking $150,000 in damages, plus interest. We affirmed the dismissal of that action, concluding the district court did not err in refusing to permit the introduction of parol evidence to show that $150,000, plus interest, was supposed to be paid within 90 to 120 days after the settlement agreement. *Silbernagel v. Silbernagel*, 2007 ND 124, ¶¶ 9–15, 736 N.W.2d 441. We said the parol evidence

about interest and the payment date would directly conflict with language granting Stephen and Jane Silbernagel " 'a reasonable period of time within which to secure financing to make the $150,000.00 payment' " and stating the payment was " '[i]n full settlement of the pending actions.' " *Id.* at ¶¶ 13–14. We also concluded there was evidence John M. and Tom Silbernagel had failed to cooperate with a quiet title action, and we concluded the court did not clearly err in finding Stephen and Jane Silbernagel did not breach the settlement agreement and judgment. *Id.* at ¶¶ 16–19.

[¶ 4] After the entry of the stipulated judgment, Stephen and Jane Silbernagel brought a quiet title action to clear title to Marcella Silbernagel's land, which consisted of about 996 acres. During the quiet title action, Betty Jo Elliot, a niece of John P. Silbernagel and a granddaughter of Marcella Silbernagel, asserted a claim to the land. The quiet title action resulted in an April 4, 2006 judgment determining that Elliot owned a one-twelfth interest in Marcella Silbernagel's land and that John M. and Tom Silbernagel each owned a one twenty-fourth interest in the land. *See Silbernagel v. Silbernagel*, 2006 ND 235, ¶¶ 1–2, 725 N.W.2d 588 (holding prior judgment in heirship proceeding was res judicata regarding Elliot's share of the land and summarily affirming Elliot's appeal in quiet title action).

[¶ 5] Meanwhile, Stephen and Jane Silbernagel attempted to secure financing for their $150,000 payment to John M. and Tom Silbernagel. However, their loan requests were denied because they were not able to pledge all of Marcella Silbernagel's land as security for the proposed loan. In September 2007, Stephen and Jane Silbernagel moved under N.D.R.Civ.P. 60(b)(6) to amend the April 29, 2005 stipulated judgment, claiming the judgment was impossible to perform because they could not

get clear title to all of Marcella Silbernagel's land and could not use all that land to finance their $150,000 payment to John M. and Tom Silbernagel. In February 2008, the district court concluded the October 2004 stipulation and April 2005 judgment did not require John M. and Tom Silbernagel to convey Elliot's interest in Marcella Silbernagel's land to Stephen and Jane Silbernagel. However, the court amended the April 2005 judgment to clarify that "should a quiet title action be necessary to clear title on the lands involved in the Marcella Silbernagel estate, John M. Silbernagel and Tom Silbernagel will cooperate with said action to the fullest extent necessary."

[¶ 6] In September 2007, the court appointed a referee under N.D.C.C. ch. 32–10 to "carry that [j]udgment dated April 29, 2005, . . . into effect." In a June 12, 2008 letter to counsel and the court, the referee opined that John M. and Tom Silbernagel had satisfied the terms of the stipulated judgment:

1. Pursuant to the terms of the stipulated settlement, did John and Tom agree to convey their interests in the "estates" or to the "land" to Jane and Steve? I note that the stipulation expressly uses the word "estates" and not "land". In my . . . opinion, an assignment document executed by John and Tom is all that would be required to satisfy this stipulated term. [Counsel for John and Tom] delivered an original Assignment document to my office. In my opinion, Tom and John have met their obligations regarding this element.

2. Pursuant to the terms of the stipulation, did John and Tom agree or guaranty that Steve and Jane would end up with 100% of the "land"? Again, the language of the Stipula-

tion discusses interests in the "estates" and not interests in the "land". In my . . . opinion, Tom and John agreed to convey their interests in the "estates" to Steve and Jane. There was no discussion of a conveyance of "land". Although Steve and Jane may have intended and desired to acquire 100% of the "land", the language of the stipulation is clear and unambiguous. Upon tender of the assignment of interest document referenced in item 1, above, John and Tom met their obligations under the terms of the stipulation.

3. Pursuant to the terms of the stipulation, was the stipulation contingent on Steve and Jane obtaining 100% financing for the $150,000 purchase price? The stipulation states that Steve and Jane would be afforded " . . . reasonable time to secure financing". Initially, the language did not state that the land and only the land would be pledged by Steve and Jane as security for the financing. Second, the language of the stipulation did not cause the settlement to be contingent on financing. Although Steve and Jane may have intended that the stipulation be contingent on their ability to secure financing for 100% of the purchase price, the language read into the record did not create such a contingency. Third, years have now passed since the date of the hearing and the stipulated settlement. I[t is] my position that Steve and Jane have had reasonable time to secure financing.

4. Pursuant to the terms of the stipulation, was the settlement contingent on the success of Steve and Jane's proposed quiet title action? The stipulation stated that Tom and

John would "cooperate" with the quiet title action, which they have now done. Although Steve and Jane may have desired that the stipulation be contingent on the success of the quiet title action, the language used by the parties did not create that contingency. The stipulation is not contingent on the success of Steve and Jane's quiet title action. Steve and Jane may have discussed some of the foregoing matters with their attorney at the October 19, 2004 hearing. Unfortunately, as read into the record, the stipulation was not conditioned on any of the disputed matters. The Court carefully notified each party that the stipulation was like a contract and each party acknowledged and agreed to the terms of the stipulation as read into evidence. All parties were represented by legal counsel and no party can argue that he or she did not understand the terms and legal consequences of the stipulated settlement. I do not believe it would be proper or appropriate to add terms or conditions to what, in my opinion, is an unambiguous, fully integrated agreement.

It is my opinion that John and Tom have now tendered full performance of their obligations pursuant to the stipulated settlement. What remains is the required performance by Steve and Jane.

[¶ 7] In July 2008, Stephen and Jane Silbernagel moved to stay actions by the referee and to clarify the April 2005 judgment. They claimed the judgment could not be completed as contemplated by the parties, because they could not get clear title to all of Marcella Silbernagel's property. John M. and Tom Silbernagel responded with a motion for interest on the $150,000 payment. The district court denied Stephen and Jane Silbernagel's motion, explaining the 2005 judgment did not require John M. and Tom Silbernagel to convey Elliot's interest in the land and did not require financing for the $150,000 payment to be obtained by using only that land as security. The court granted John M. and Tom Silbernagel's request for interest, stating *Silbernagel*, 2007 ND 124, ¶ 14, 736 N.W.2d 441, did not forever preclude interest. The court ordered Stephen and Jane Silbernagel to pay interest on the $150,000 award from April 4, 2006, the date of the trial court judgment in the quiet title action.

[¶ 8] John M. and Tom Silbernagel thereafter moved for an order requiring Stephen and Jane Silbernagel to pay them the $150,000, plus interest, under the April 2005 judgment. After a hearing, the district court decided that the settlement agreement, as merged into the judgment, was clear and unambiguous; that after the quiet title judgment, John M. and Tom Silbernagel had tendered full performance of their obligations under the stipulated judgment; and that Stephen and Jane Silbernagel had failed to tender performance of their obligations. The court explained:

 a. Steve and Jane assert that, pursuant to the terms of the settlement stipulation, as merged into the Judgment, John and Tom agreed that Steve and Jane would acquire fee simple title to 100% of all of John P's and Marcella's "land". John and Tom allege that the terms of the settlement stipulation, as merged into the Judgment, required that John and Tom were to "release" their interests in the "estates" of John P. and Marcella. The Court finds that the Settlement Stipulation and Judgment are not ambiguous and that, pursuant to the terms of the stipulation and Judgment, Tom and John agreed to "release" their in-

terests in the "estates" of John P. and Marcella, whatever those interests may be. Tom and John did not agree to convey land and were not guarantying title to something they did not have. The Court finds that John and Tom did not stipulate or agree to convey "land" to Steve and Jane and the April 29, 2005 Judgment did not provide that Steve and Jane would ultimately acquire title to 100% of John P's and Marcella's land.

b. Steve and Jane allege that the terms of the stipulation, as merged into the Judgment, were contingent on Steve and Jane's ability to obtain financing for the entire required $150,000 payment to John and Tom. The stipulation and Judgment expressly provide that Steve and Jane would be afforded "reasonable time to secure financing to make the $150,000 payment". The Court finds that the language of the stipulation and Judgment do not suggest or infer that the settlement was in any way contingent on Steve and Jane's ability to in fact secure financing for the entire $150,000 purchase price. The stipulation, as merged into the Judgment, does not suggest that Steve and Jane's entire $150,000 payment would be made by way of third party financing.

c. Steve and Jane argue that, pursuant to the terms of the stipulation, as merged into the Judgment, John P's and Marcella's land, and that land alone, would be pledged by Steve and Jane as security for the repayment of the $150,000 loan to be secured by Steve and Jane. The Court finds that the language of the stipulation, as merged into the Judgment, is clear and the language does not support Steve and Jane's position.

d. Steve and Jane allege that the settlement stipulation, as merged into the Judgment, was contingent on Steve and Jane obtaining a quiet title Judgment adjudging Steve and Jane as the fee simple owners of all of John P's and Marcella's land. The terms of the Judgment and stipulation provide that Tom and John would "cooperate" with Steve and Jane's quiet title action. Neither the settlement stipulation nor the Judgment, both of which are clear and unambiguous, suggest or infer that the settlement was contingent on Steve and Jane obtaining a quiet title Judgment adjudging Steve and Jane as the fee simple owners of all of John P's and Marcella's land. The Court finds that stipulation and Judgment only required that Tom and John "cooperate" with Steve and Jane's proposed quiet title action; which quiet title action was completed on April 4, 2006.

12. The Court finds that Steve and Jane are attempting to create ambiguity in the April 29, 2005 Findings of Fact where there are none. The Findings of Fact clearly provide that Tom and John were to convey their interests in the "estates" of John P and Marcella to Steve and Jane. Tom and John's interests did not include Betty Jo Elliot's property.

[¶ 9] The court decided the settlement agreement and judgment were not contingent on Stephen and Jane Silbernagel securing financing for the entire $150,000

payment and were not contingent on them obtaining complete ownership to all of Marcella Silbernagel's land. The court awarded John M. and Tom Silbernagel $150,000, with interest as provided by law from April 4, 2006, the date of the trial court judgment in the quiet title action, and ordered that if Stephen and Jane Silbernagel ever decided to sell the land, John M. and Tom Silbernagel would have an option to purchase the land within 120 days after receiving notice of the proposed sale.

## II

[¶ 10] Stephen and Jane Silbernagel contend the settlement agreement and judgment contemplated they would acquire clear title to all of Marcella Silbernagel's land, that her land would be the only collateral to be pledged as security for a $150,000 loan to pay John M. and Tom Silbernagel, and that because Elliot asserted an interest in the land, the purpose of the settlement agreement and judgment was frustrated. Stephen and Jane Silbernagel also argue the district court erred in deciding John M. and Tom Silbernagel had tendered full performance under the settlement agreement and judgment, and they seek to vacate the April 2005 judgment and remand for trial on the merits.

[¶ 11] When a settlement agreement is merged into a judgment, the agreement is interpreted and enforced as a final judgment and not as a separate contract between the parties. *Silbernagel,* 2007 ND 124, ¶ 10, 736 N.W.2d 441. In *Sullivan v. Quist,* 506 N.W.2d 394, 401 (N.D.1993) (quoting *Henry S. Grinde Corp. v. Klindworth,* 77 N.D. 597, 613–14, 44 N.W.2d 417, 427–28 (1950) (on petition for rehearing) (internal citations omitted)), we explained rules for interpreting a judgment:

"The legal operation and effect of a judgment must be ascertained by a construction and interpretation of its terms, and this presents a question of law for the court. If the language used in a judgment is ambiguous there is room for construction, but if the language employed is plain and unambiguous there is no room for construction or interpretation, and the effect thereof must be declared in the light of the literal meaning of the language used." The judgment "should be so construed as to give effect to each and every part of it, and bring all the different parts into harmony as far as this can be done by fair and reasonable interpretation." "A judgment, plain and unambiguous in its terms, may not be modified, enlarged, restricted, or diminished by reference to the" Findings of Fact.

[¶ 12] Stephen and Jane Silbernagel's argument raises issues involving their motion to amend the judgment under N.D.R.Civ.P. 60(b)(6), which, at the time relevant to this proceeding, authorized relief from a judgment for "any other reason justifying relief from the operation of the judgment." A district court is vested with discretion in ruling on a motion for relief from a judgment under N.D.R.Civ.P. 60(b)(6), and the court's decision will not be disturbed on appeal absent an abuse of discretion. *First Nat'l Bank v. Bjorgen,* 389 N.W.2d 789, 794 (N.D.1986). A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned determination, or if it misinterprets or misapplies the law. *Motschman v. Bridgepoint Mineral Acquisition Fund, LLC,* 2011 ND 46, ¶ 10, 795 N.W.2d 327. This Court has also recognized that where a judgment sought to be set aside is based upon a contractual stipulation, the party challenging the judgment under

N.D.R.Civ.P. 60(b) must show justification under the law of contracts for setting the stipulation aside. *Hill v. Hill,* 392 N.W.2d 819, 821 (N.D.1986); *Wolfe v. Wolfe,* 391 N.W.2d 617, 620 (N.D.1986); *Fleck v. Fleck,* 337 N.W.2d 786, 790 (N.D.1983).

 [¶ 13] Frustration of purpose is a defense to a breach of contract claim and constitutes an avoidance of all or part of a plaintiff's contract claim. *WFND, LLC v. Fargo Marc, LLC,* 2007 ND 67, ¶ 18, 730 N.W.2d 841. "[F]rustration of purpose 'occurs when "after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made." ' " *Id.* (quoting *Tallackson Potato Co., Inc. v. MTK Potato Co.,* 278 N.W.2d 417, 424 n. 6 (N.D.1979)). In *Tallackson,* at 424 n. 6 (citations omitted), this Court also discussed a related doctrine of impossibility of performance and said that to establish impossibility, a defendant must establish "its performance is strictly impossible or impracticable 'because of extreme and unreasonable difficulty, expense, injury or loss,' and that [a third-party's actions] rendered [the defendant's] performance not only subjectively but also objectively impossible or impracticable. In other words, [the defendant] must show that it cannot perform and that performance could not be completed by anyone."

[¶ 14] Stephen and Jane Silbernagel claim the purpose of the settlement agreement and judgment has been frustrated by Elliot's unexpected claim to her grandmother's land. They claim the agreement and judgment contemplated they would acquire title to all of Marcella Silbernagel's land and that her land would be the only collateral pledged as security for a $150,000 loan to pay John M. and Tom Silbernagel. They assert the purpose of the judgment has been frustrated because they could not obtain clear title to all of Marcella Silbernagel's land.

[¶ 15] The district court decided John M. and Tom Silbernagel agreed to release their interests in the land to Stephen and Jane Silbernagel, but they had no interest in Elliot's share of the land and could not release her interest. The court said John M. and Tom Silbernagel had no authority to transfer Elliot's interest to Stephen Silbernagel and the stipulation and judgment did not require them to transfer her interest. The court concluded the language of the judgment did not contemplate: that Stephen and Jane Silbernagel would ultimately acquire title to all of John P. and Marcella Silbernagel's land; that the settlement was contingent on Stephen and Jane Silbernagel's ability to secure financing for the entire $150,000 purchase price; that only John P. and Marcella Silbernagel's land would be pledged as security for the repayment of the $150,000 loan; that the settlement was contingent on Stephen and Jane Silbernagel obtaining a quiet title judgment adjudging Stephen and Jane Silbernagel as the fee simple owners of all of John P. and Marcella Silbernagel's land; and that John and Tom Silbernagel were guaranteeing that, as a result of the quiet title action, Stephen and Jane Silbernagel would be adjudged fee title owners of all of John P. and Marcella Silbernagel's land. The court decided John M. and Tom Silbernagel had tendered full performance of their obligations under the judgment and Stephen and Jane Silbernagel had failed to perform their obligations under the judgment.

 [¶ 16] The district court's interpretation and analysis comport with the plain language in the settlement agreement and stipulated judgment, which does not establish a "basic assumption" of the stipulated judgment was the acquisition of

all of Marcella Silbernagel's land as the only security for financing a loan to pay the $150,000 to John M. and Tom Silbernagel. The parties' objective manifestations from the language of the settlement agreement and stipulated judgment, rather than Stephen and Jane Silbernagel's secret or subjective manifestations of intent, control the interpretation. *See Johnson v. Johnson*, 2000 ND 170, ¶ 36, 617 N.W.2d 97; *Tallackson*, 278 N.W.2d at 424 n. 6; *Amann v. Frederick*, 257 N.W.2d 436, 439 (N.D.1977). There is evidence in this record to support the court's findings that at the time of this proceeding John M. and Tom Silbernagel had tendered full performance of their obligations and Stephen and Jane Silbernagel had failed to tender performance of their obligations. To the extent Stephen and Jane Silbernagel argue the court's factual findings are clearly erroneous, we conclude those findings are supported by the stipulated judgment and record and are not clearly erroneous under N.D.R.Civ.P. 52(a). To the extent Stephen and Jane Silbernagel argue the district court erred in interpreting the stipulated judgment, we conclude the court did not err in construing the judgment and did not abuse its discretion in denying the motion to amend the judgment.

### III

■ [¶ 17] Stephen and Jane Silbernagel argue the district court erred in awarding John M. and Tom Silbernagel interest on the $150,000 payment from April 4, 2006, which was the date of the trial court judgment in the quiet title action. *See Silbernagel*, 2006 ND 235, 725 N.W.2d 588 (summarily affirming decision in quiet title action in appellate court opinion dated November 28, 2006). Stephen and Jane Silbernagel argue interest should not have been allowed under collateral estoppel and this Court's affirmance of the prior breach of contract action. *See Silbernagel*, 2007 ND 124, 736 N.W.2d 441 (affirming breach of contract action).

■ [¶ 18] " 'Collateral estoppel, or issue preclusion, forecloses relitigation of issues of either fact or law in a second action based on a different claim, which were necessarily litigated, or by logical and necessary implication must have been litigated, and decided in the prior action.' " *Riverwood Commercial Park, L.L.C. v. Standard Oil Co., Inc.*, 2007 ND 36, ¶ 13, 729 N.W.2d 101 (quoting *Ungar v. North Dakota State University*, 2006 ND 185, ¶ 11, 721 N.W.2d 16). In *Hofsommer v. Hofsommer Excavating, Inc.*, 488 N.W.2d 380, 384 (N.D.1992), we said:

Four tests must be met before collateral estoppel will bar relitigation of a fact or issue involved in an earlier lawsuit: (1) Was the issue decided in the prior adjudication identical to the one presented in the action in question?; (2) Was there a final judgment on the merits?; (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?; and (4) Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

[¶ 19] Although this case and the prior breach of contract action both involve an issue about interest, the underlying basis for interest has changed since this Court's decision in *Silbernagel*, 2007 ND 124, 736 N.W.2d 441. The issue in *Silbernagel* involved whether the parties' actual agreement contemplated interest and not whether subsequent events may have generated another basis for interest. There is evidence in this record that after the pertinent time-frame of *Silbernagel*, John M. and Tom Silbernagel had complied with the April 2005 stipulated judgment and Stephen and Jane Silbernagel had not complied with the judgment. As relevant

to this case, the district court specifically found that John M. and Tom Silbernagel had complied with the April 2005 judgment and Stephen and Jane Silbernagel had not complied with the judgment, and we have concluded that those findings are not clearly erroneous. Under those findings, Stephen and Jane Silbernagel have not paid John M. and Tom Silbernagel the $150,000 obligation due under the stipulated judgment and a trial court judgment was entered in the quiet title action on April 4, 2006. *See Silbernagel,* 2006 ND 235, 725 N.W.2d 588 (summarily affirming quiet title judgment).

[¶ 20] Section 28–20–34, N.D.C.C., authorizes interest on judgments. Under that statute and the findings in this case, *Silbernagel,* 2007 ND 124, 736 N.W.2d 441, does not control the later assessment of interest, and the district court was authorized to award interest at the legal rate on the $150,000 obligation from the April 4, 2006 trial court judgment in the quiet title action. *See Dick v. Dick,* 434 N.W.2d 557, 559 (N.D.1989) (holding district court authorized under N.D.C.C. § 28–20–34 to order interest from due date of cash award in divorce action). We conclude the district court did not err in awarding interest at the legal rate from the date of the trial court judgment in the quiet title action.

## IV

[¶ 21] Stephen and Jane Silbernagel argue the district court erred in giving John M. and Tom Silbernagel 120 days to deliver written notice of their election to purchase the land if Stephen and Jane Silbernagel ever decided to sell the property. Stephen and Jane Silbernagel claim the district court lacked jurisdiction because the issue was not specifically presented to the court in a motion under N.D.R.Civ.P. 7(b).

[¶ 22] We have said that a paramount purpose of N.D.R.Civ.P. 7(b) is to inform a party of the nature of claims asserted against that party and the relief demanded by the opposing party. *Vande Hoven v. Vande Hoven,* 399 N.W.2d 855, 859 (N.D. 1987). Here, in the context of a motion to enforce the April 2005 judgment, the parties asked the district court to finally resolve all disputed issues in this litigation to simplify the appeal process and the court decided that if Stephen and Jane Silbernagel ever elected to sell the land, John M. and Tom Silbernagel would have an option to purchase the land within 120 days after receiving notice of the proposed sale. We recognize that the parties' protracted dispute about the estate of John P. Silbernagel has been ongoing since at least 2002. The April 2005 judgment granted John M. and Tom Silbernagel a first option to purchase the land if Stephen and Jane Silbernagel ever elected to sell the land, but did not otherwise delineate any specifics for exercising that option.

[¶ 23] "A party recovering a judgment ordinarily has a right to proceed to enforce it," and "[t]he jurisdiction of a court to enforce its decrees is coextensive with its jurisdiction to determine the rights of the parties to the controversy." *Zent v. Zent,* 281 N.W.2d 41, 47 (N.D. 1979). We have recognized that if the same trial judge clarifies an original judgment, we afford the judge's action considerable deference. *Neubauer v. Neubauer,* 552 N.W.2d 793, 795 (N.D.1996). Here, in the context of a proceeding to enforce the prior stipulated judgment, the same district court judge delineated a time frame for exercising an option to purchase the land if Stephen and Jane Silbernagel elected to sell the land. The district court's decision set some time limitations for an otherwise indefinite option in the context of protracted litigation and is entitled to

some deference. *See Neubauer,* 552 N.W.2d at 795.

[¶ 24] In *City of Wahpeton v. Drake–Henne, Inc.,* 228 N.W.2d 324, 331 (N.D. 1975), this Court explained in a somewhat similar context:

> "It is for the public interest and policy to make an end to litigation * * * 'so that' * * * suits may not be immortal, while men are mortal." As Judge Heen wrote in his memorandum of opinion of October 22, 1974, "... there should be at some point an end to litigation, ..." Let this be it.

This Court's comments in *Drake–Henne* are particularly applicable to this litigation. We conclude the court's decision to specify John M. and Tom Silbernagel have 120 days to exercise an option to purchase if Stephen and Jane Silbernagel elect to sell the land is entitled to deference under the circumstances in this case and the court did not abuse its discretion in defining an option to reasonably end this protracted litigation.

### V

[¶ 25] We affirm the judgment.

[¶ 26] MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.

VANDE WALLE, Chief Justice, concurring in part and dissenting in part.

[¶ 27] I concur in all of the majority opinion except Part III with which I respectfully dissent.

[¶ 28] Stephen and Jane Silbernagel contend the district court awarded interest to punish them "for what John and Tom perceived was disregarding the trial court's order." I do not agree with that contention. I agree with the majority that John and Thomas Silbernagel were entitled to interest after a reasonable time during which Stephen and Jane were to arrange financing to pay the $150,000.00 agreed to in the settlement and reduced to judgment. I also agree with the majority that our decision in *Silbernagel v. Silbernagel,* 2007 ND 124, 736 N.W.2d 441, does not preclude interest as a matter of law.

[¶ 29] I assume the district court and the majority chose the date of the judgment in the quit claim action in the district court, April 4, 2006, as the date by which Stephen and Jane Silbernagel had been allowed a reasonable time to secure the financing to purchase the property at issue. However, I do not understand the district court's finding and the majority's statement that John M. and Tom Silbernagel had complied with the April, 2005 judgment at the time of the quit claim judgment in April, 2006. In April, 2006, there was pending John and Tom Silbernagel's breach of contract action against Stephen and Jane Silbernagel. In that action John and Tom Silbernagel contended that "the $150,000 was supposed to be paid within 90 to 120 days after the settlement agreement was reached and that interest was intended to accrue on the $150,000 debt." *Id.* at ¶ 9. We held that such contentions would "vary and contradict the terms of the settlement agreement" and "[a]dding accrued interest would contradict the clear payment obligation of $150,000." *Id.* at ¶ 14. I would conclude that a party who is contending in a legal action that the judgment requires something which it does not require cannot be found to have complied with that judgment at the time the party was making those contentions. If compliance with the April, 2005 judgment by John and Tom Silbernagel is a part of the determination of the reasonable time analysis, arguably, the "reasonable period of time within which to secure financing" should not have expired until our decision in July, 2007 rejecting those contentions

resolved the requirements of the settlement judgment.

[¶ 30] However, even if I were to agree that the "reasonable period of time" ended with the completion of the quiet title action, I disagree with the district court's determination that the quiet title action was completed on April 4, 2006. As the district court observed, the 2005 settlement agreement reduced to judgment "required John and Tom to 'cooperate' with Steve and Jane's proposed quiet title action." Subsequent to the April, 2006 judgment in the quiet title action, Betty Jo Elliot appealed that judgment to this Court. We affirmed the judgment in *Silbernagel v. Silbernagel*, 2006 ND 235, 725 N.W.2d 588, on November 28, 2006 and this Court's mandate was issued on December 26, 2006. I believe John and Tom Silbernagel's obligation to cooperate with the quiet title action continued through the appeal and I therefore conclude the quiet title action was not completed on April 4, 2006, but rather was completed on December 26, 2006.

[¶ 31] For the reasons stated above, I would reverse that portion of the district court judgment awarding interest from April 4, 2006 and remand for further consideration of the date on which the interest should begin to accrue.

[¶ 32] GERALD W. VANDE WALLE, C.J.