2015 ND 33

**The CITY OF HARWOOD, a political subdivision of the State of North Dakota, and Lake Shure Estates, Inc., a North Dakota nonprofit corporation, Plaintiffs and Appellees**

v.

**The CITY OF REILES ACRES, a political subdivision of the State of North Dakota, Dr. Ron Knutson, and all other persons unknown claiming any interest or estate in, or lien or encumbrance upon, the property described in the Complaint, Defendants**

**The City of Reiles Acres, a political subdivision of the State of North Dakota, Appellant.**

**No. 20140089.**

Supreme Court of North Dakota.

Feb. 12, 2015.

Rehearing Denied March 24, 2015.

Andrew D. Cook (argued) and Robert G. Hoy (on brief), West Fargo, N.D., for plaintiffs and appellees.

Jonathan T. Garaas, Fargo, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1]   The City of Reiles Acres appeals from a judgment entered after a bench trial declaring the contractual obligations of Reiles Acres and the City of Harwood under a 1985 contract for construction and operation of a waste water treatment facility known as the Harwood Lagoon were discharged by frustration of purpose and from an order confirming a partition by public sale of the land encompassing the Harwood Lagoon.   Reiles Acres argues the district court lacked subject matter and personal jurisdiction to enter a declaratory judgment nullifying the parties' contractual obligations and to order a partition sale of the land.   We conclude the court had jurisdiction to construe contracts in the declaratory judgment action and the court did not err in construing a 1985 contract between Harwood and Reiles Acres and determining the principal purpose of the contract was frustrated.   We further conclude the court did not err in ordering partition by public sale of the land.   We affirm the judgment and the order confirming the sale.

I

[¶ 2]   In the early 1980s, Harwood and Reiles Acres entered a series of agreements to address common waste water treatment problems.   In June 1985, they agreed in writing to construct and operate the Harwood Lagoon near the municipalities.   Under that agreement, which stated it superseded their previous agreements, Harwood was responsible for 68 percent and Reiles Acres for 32 percent of the acquisition and construction costs of the Harwood Lagoon.   Each municipality was responsible for maintenance and operational costs of their own collection system, including their own metered force main into the Harwood Lagoon, and Harwood was responsible for administering and managing the operation of the facility.   Their agreement allocated 68 percent of the maintenance costs for the facility to Harwood and 32 percent of those costs to Reiles Acres and also allotted 68 percent of the facility's capacity to Harwood's customers and users and 32 percent of the facility's capacity to Reiles Acres' customers and users.   The agreement ultimately resulted in Harwood owning an undivided 68 percent interest and Reiles Acres owning an undivided 32 percent interest in the Harwood Lagoon.

[¶ 3]   In 1985, the Harwood Lagoon was constructed on land south of Harwood and north of Reiles Acres.   A four-inch force main runs north from Reiles Acres along 45th Street to 52nd Avenue, where the line increases to a six-inch force main that runs east under Interstate 29 and then north to the Harwood Lagoon.   The water treatment facility consists of a three-cell aerobic-stabilization-pond system with a primary cell and two secondary cells.   The primary cell is used for settling of solids and the initial treatment of raw sewage, and after a certain number of days of treatment in the primary cell, the waste water is drained into one of the secondary cells for further aerobic treatment.   The waste water generally remains in that secondary cell until it satisfies state water quality standards for discharge.   According to David Bergsagel, an environmental engineer for the State Health Department, a pond system waste water treatment facility such as the Harwood Lagoon is required to provide 180 days of winter storage capacity in its cells because the facility

does not discharge water during the winter.

[¶ 4] In July 1985, Lake Shure Properties, a North Dakota general partnership acting as the owner-developer of the North 81–20 subdivision and Willow Tree subdivision, purchased from Reiles Acres the right to use 50 percent of Reiles Acres' volumetric capacity in the lagoon, which constituted 16 percent of the total capacity of the lagoon. The agreement between Lake Shure Properties and Reiles Acres permitted each party to buy, sell, or otherwise deal with their respective share of the facility's volume. Under that agreement, Lake Shure Properties paid Reiles Acres a share of construction costs, "adjusted so as to require [Lake Shure Properties] to pay 9.73% actual costs of [Reiles Acres' collection system] and 16% of the actual total local share" for waste water treatment in the Harwood Lagoon. In March 1993, Lake Shure Properties transferred 56.5 percent of its interest in the volumetric capacity in the Harwood Lagoon to Lake Shure Estates, Inc., a North Dakota non-profit corporation consisting of home-owners residing in the Lake Shure Estates' subdivision near Harwood and Reiles Acres. Lake Shure Estates is located west of 45th Street, and its four-inch force main goes east from 57th Street to the intersection of 45th Street and 52nd Avenue, where it connects to the six-inch force main running to the Harwood Lagoon. The transfer resulted in Lake Shure Estates obtaining 9.04 percent of the total waste water treatment capacity of the Harwood Lagoon.

[¶ 5] According to Bernie Stasch, Harwood's state certified operator for the lagoon, the facility was designed to provide waste water treatment services for approximately 500 people, and the population growth of Harwood and Reiles Acres made it difficult for the municipalities to contin-ue to provide the required 180 days of winter storage capacity for the facility. In 1998, Reiles Acres contracted with Fargo for treatment of Reiles Acres' waste water, and since that time, it has not used the Harwood Lagoon for waste water treatment services. In 2009, Harwood contracted with Fargo for waste water treatment services, and in 2010, Lake Shure Estates contracted with Fargo for waste water treatment services. Neither Harwood nor Lake Shure Estates has used the Harwood Lagoon for municipal waste water treatment services since they contracted with Fargo for those services.

[¶ 6] In 2011, Harwood and Lake Shure Estates sued Reiles Acres, Dr. Ron Knutson, and all other persons unknown claiming any interest in the Harwood Lagoon, seeking a declaration of the parties' interests and obligations under their contracts and a partition of the Harwood Lagoon property. The complaint alleged that Harwood owned 68 percent and Reiles Acres owned 32 percent of the Harwood Lagoon and that Lake Shure Estates, the successor in interest to Lake Shure Properties, and Dr. Ron Knutson had a right to use part of the capacity of the water treatment facility. The complaint alleged the Harwood Lagoon had exceeded its expected useful life and needed significant repairs, maintenance, and upgrades and the costs to make those upgrades and repairs exceeded the value of the lagoon. The complaint sought a declaration that the 1985 contract between Harwood and Reiles Acres superseded all prior agreements between Harwood and Reiles Acres and that the contract between Lake Shure Properties and Reiles Acres created an easement by estoppel in the Harwood Lagoon in favor of Lake Shure Properties' successors in interest, Lake Shure Estates and Knutson. The complaint sought a declaration that all contracts between the parties relating to and arising out of the

Harwood Lagoon and the obligations created by those agreements be discharged because of frustration of the underlying purpose of the agreements. The complaint also sought partition by public sale of the Harwood Lagoon property and distribution of the proceeds of the sale among the parties according to their respective interests, or alternatively, partition of the property according to the parties' respective rights.

[¶ 7] After a bench trial, the district court held the 1985 agreement between Harwood and Reiles Acres superseded their prior agreements and the principal purpose of their 1985 agreement was to construct and maintain one waste water treatment facility for use by both municipalities' customers and users. The court found the 1985 agreement's principal purpose was substantially frustrated after both Reiles Acres and Harwood contracted with Fargo for their waste water treatment needs. The court explained the Harwood Lagoon was no longer providing waste water treatment services for Harwood and Reiles Acres, which was a basic assumption for the 1985 agreement. The court found Harwood's contractual responsibilities to pay maintenance costs were impractical, which was caused by both Reiles Acres and Harwood contracting with Fargo for their waste water treatment needs and no longer using the Harwood Lagoon. The court found neither Harwood nor Reiles Acres was at fault for contracting with Fargo for their waste water treatment needs and no longer using the Harwood Lagoon, because both entities had increased population that placed great strains on the Harwood Lagoon. The court declared that the obligations of Harwood and Reiles Acres under the 1985 agreement were discharged and that Harwood owned 68 percent and Reiles Acres owned 32 percent of the Harwood Lagoon. The court also held Reiles Acres, Lake Shure Estates, and Knutson each had an undivided ownership interest in and right to use the six-inch force main running from the intersection of 45th Street and 52nd Avenue to the Harwood Lagoon. The court ordered partition by public sale of the Harwood Lagoon land. The court subsequently confirmed the sale of the Harwood Lagoon land to Fargo, for $250,000. After deductions for costs, the court ordered distribution of $169,920.34 to Harwood for its 68 percent ownership interest in the Harwood Lagoon and $79,962.52 to Reiles Acres for its 32 percent ownership interest.

[¶ 8] Reiles Acres claims the district court lacked subject matter and personal jurisdiction, and we consider those jurisdictional arguments with its other arguments. Reiles Acres' appeal from the declaratory judgment and the order confirming the sale of the land is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D.C.C. §§ 28–27–01, 28–27–02, and 32–23–07.

II

[¶ 9] Reiles Acres argues the district court lacked personal and subject matter jurisdiction to decide the plaintiffs' claims for declaratory judgment and for partition.

A

[¶ 10] To issue a valid judgment or order, a district court must have subject matter jurisdiction to hear the action and personal jurisdiction over the parties. *Albrecht v. Metro Area Ambulance*, 1998 ND 132, ¶ 10, 580 N.W.2d 583; *Larson v. Dunn*, 474 N.W.2d 34, 38 (N.D.1991). A judgment is void if the court lacks subject matter jurisdiction over the action or if the court lacks personal jurisdiction over the parties. *First W. Bank & Trust v. Wickman*, 527 N.W.2d 278, 279 (N.D.1995).

Subject matter jurisdiction refers to the court's power to hear and determine the general subject involved in the action, and personal jurisdiction refers to the court's power over a party. *Albrecht*, at ¶ 10; *Larson*, at 38. A court has subject matter jurisdiction to hear a proceeding if authorized by the constitution and law to hear that type of proceeding. *Larson*, at 38. A court has personal jurisdiction over a party if the party has reasonable notice an action has been brought and sufficient connection with the forum state to make it fair to require defense of the action in the state. *Id.* at 38–39. Personal jurisdiction over a party generally is acquired by service of process in compliance with N.D.R.Civ.P. 4. *Larson*, at 39. A party may waive issues about personal jurisdiction, but subject matter jurisdiction cannot be conferred by agreement, consent, or waiver. *Albrecht*, at ¶ 10.

[¶ 11] Under N.D. Const. art. VI, § 8, a district court has original jurisdiction of all causes, except as otherwise provided by law. District courts have general jurisdiction conferred upon courts by the constitution and have jurisdiction under N.D.C.C. § 27–05–06 to hear and determine all civil actions and proceedings. Under N.D.C.C. § 32–23–01, a "court of record within its jurisdiction shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Section 32–23–02, N.D.C.C., says, "Any person interested under a . . . written contract . . . or whose rights, status, or other legal relations are affected by a . . . contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and may obtain a declaration of rights, status, or other legal relations thereunder." Under the statutory provisions authorizing a declaratory judgment action, "[a] contract may be construed either before or after there has been a breach thereof."

N.D.C.C. § 32–23–03. A court may refuse to render a declaratory judgment if the judgment would not terminate the uncertainty giving rise to the controversy. N.D.C.C. § 32–23–06. When declaratory relief is sought, all persons having or claiming any interest that would be affected by the declaration must be made parties, and a declaration may not prejudice the rights of persons not named as parties to the proceeding. N.D.C.C. § 32–23–11. The provisions authorizing declaratory relief are remedial and are to be construed and administered liberally to afford relief from uncertainty about rights, status, and other legal relations. N.D.C.C. § 32–23–12.

[¶ 12] The declaratory judgment statutes are not jurisdictional. *State v. J.P. Lamb Land Co.*, 359 N.W.2d 368, 369 (N.D.1984). Rather, those statutes authorize a "court of record within its jurisdiction" to construe contracts before or after breach and to declare rights under the contract. N.D.C.C. §§ 32–23–01, 32–23–02, and 32–23–03. This Court has long recognized a district court, being a court of general jurisdiction, has original jurisdiction to construe and determine property rights under a contract. *Goodin v. Casselman*, 51 N.D. 543, 200 N.W. 94, 95 Syll. 2 (1924). Reiles Acres claims neither Harwood nor Lake Shure Estates has the right to initiate this declaratory judgment action to "attempt to mash" nine contracts together, rather than to construe each individual contract separately. Reiles Acres has cited nothing in this record to demonstrate the district court failed to consider the separate terms of each contract, and Reiles Acres' attempt to frame this issue as a jurisdictional argument is unavailing. We conclude the district court had subject matter jurisdiction to construe the contracts at issue in this case in the context of a declaratory judgment action.

[¶ 13] This Court has also recognized a district court has subject matter jurisdiction to consider partition claims. *In re Estate of Loomer*, 2010 ND 93, ¶ 11, 782 N.W.2d 648; *Schmidt v. Wittinger*, 2004 ND 189, ¶ 4, 687 N.W.2d 479. We conclude the district court also had subject matter jurisdiction to consider the partition claim.

[¶ 14] Reiles Acres was properly served with the summons and complaint in this action under N.D.R.Civ.P. 4, and to the extent Reiles Acres, a political subdivision of the State, raises issues about lack of personal jurisdiction, the district court had personal jurisdiction over it. *See Alliance Pipeline L.P. v. Smith*, 2013 ND 117, ¶ 18, 833 N.W.2d 464 (personal jurisdiction over party generally acquired by service of process under N.D.R.Civ.P. 4). To the extent Reiles Acres raises issues about the lack of personal jurisdiction over other potential parties or entities who may have an interest in the action, we conclude Reiles Acres may not raise the legal rights or interests of those entities. *See State v. Carpenter*, 301 N.W.2d 106, 107 (N.D.1980) (parties generally must assert their own legal rights and interests and cannot rest their claims on the legal rights and interests of third parties). *See also* N.D.C.C. §§ 32–16–03 ("No person having a conveyance of, or claiming a lien on, the property, or some part of it, need be made a party to the [partition] action, unless such conveyance or lien appears of record.") and 32–23–11 ("When declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties, and a declaration may not prejudice the rights of persons not parties to the proceeding.").

[¶ 15] To the extent Reiles Acres claims the plaintiffs and the district court impermissibly intermingled a declaratory judgment claim and a partition claim, we reject that assertion. Our rules of procedure permit joinder of claims and remedies against an opposing party. *See* N.D.R.Civ.P. 18 (authorizing joinder of claims and remedies). Here the complaint sought a declaration of the parties' rights, status, and legal relations under several contracts, and after resolution of that claim, a partition of the Harwood Lagoon property based on the parties' respective interests in the land. Our rules of procedure permit those claims for relief in one action, and we conclude the district court had subject matter and personal jurisdiction to entertain the declaratory judgment claim and the partition claim in one action against Reiles Acres.

B

[¶ 16] Reiles Acres claims it has not breached any of its obligations under the 1985 agreement with Harwood and a declaratory judgment action cannot be used to alter, reform, or nullify Harwood's contractual obligations. Reiles Acres also claims Lake Shure Estates was not a party to the 1985 agreement between Harwood and Reiles Acres and has no right to seek a declaratory judgment with respect to the terms of that agreement.

[¶ 17] The plaintiffs' complaint sought to declare that all contracts between the parties arising out of the Harwood Lagoon and the obligations created by those agreements be discharged because of frustration of purpose and did not seek to continue operating under an altered or reformed contract. Reiles Acres' reliance on cases about alteration or reformation of a contract is misplaced. *See Biteler's Tower Serv., Inc. v. Guderian*, 466 N.W.2d 141, 143–44 (N.D.1991); *E.E.E., Inc. v. Hanson*, 318 N.W.2d 101, 104 (N.D.1982).

[¶ 18] This Court has recognized the doctrine of frustration of purpose may be

used to avoid all or part of a contractual claim. *Silbernagel v. Silbernagel,* 2011 ND 140, ¶ 13, 800 N.W.2d 320; *WFND, LLC v. Fargo Marc, LLC,* 2007 ND 67, ¶ 18, 730 N.W.2d 841. *See generally* Restatement (Second) of Contracts § 265 (1981) (describing discharge of contractual obligations by frustration of purpose). This Court has described the doctrine of frustration of purpose as a defense to a contract claim and an avoidance of all or part of a breach of contract claim. *Silbernagel,* at ¶ 13; *WFND,* at ¶ 18. In *Silbernagel,* at ¶ 13, this Court explained:

> "[F]rustration of purpose 'occurs when "after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made." ' " [*WFND,*] at ¶ 18 (quoting *Tallackson Potato Co., Inc. v. MTK Potato Co.,* 278 N.W.2d 417, 424 n. 6 (N.D. 1979)).

[¶ 19] In *Silbernagel,* 2011 ND 140, ¶¶ 10–16, 800 N.W.2d 320, we considered an argument that the purpose of a settlement agreement and judgment was frustrated by an unexpected claim to land involved in the judgment. In *Silbernagel,* the appellants asserted a settlement agreement and judgment contemplated they would acquire clear title to all of the land used as collateral for a loan to pay other parties to the stipulated settlement, and because of an unexpected claim to an interest in the land by another entity, the appellants were unable to use the land as collateral for the loan to pay the other parties. *Id.* at ¶¶ 10, 14. The appellants argued the purpose of the settlement agreement and judgment was frustrated because they could not obtain clear title to all of the land. *Id.* The district court held the settlement agreement and judgment did not contemplate the appellants would ultimately acquire title to all the land or

that only the land would be pledged as security for a loan to pay the other parties to the agreement. *Id.* at ¶ 15.

[¶ 20] In the context of reviewing the denial of a motion to vacate the stipulated agreement and judgment, we concluded the district court's interpretation of the judgment incorporating the settlement agreement comported with the objective manifestations of the plain language of the judgment and did not establish a "basic assumption" of the stipulated judgment was to acquire clear title to all of the land to use as the only security for a loan to pay the other parties to the agreement. *Silbernagel,* 2011 ND 140, ¶ 16, 800 N.W.2d 320. We rejected the appellants' argument about frustration of purpose and concluded the district court did not err in construing the judgment and did not abuse its discretion in denying a motion to amend the judgment. *Id.*

[¶ 21] In *WFND,* 2007 ND 67, ¶¶ 2–3, 730 N.W.2d 841, the plaintiff purchased a shopping mall from the seller subject to the seller's lease of space in the mall to a commercial tenant. After the plaintiff purchased the mall from the seller, the tenant discovered it had been overpaying its rent and began paying its rent to the plaintiff at a reduced rate. *Id.* at ¶ 5. The plaintiff sued the seller, claiming the seller failed to provide the plaintiff with accurate information about the tenant's rent. *Id.* at ¶ 6. This Court concluded the plaintiff's reliance on frustration of purpose to avoid all or part of a contractual obligation was misplaced because the plaintiff had neither pled frustration of purpose nor otherwise sought to avoid the contract. *Id.* at ¶ 18. This Court explained the district court found the plaintiff was partially at fault for its misunderstanding of the tenant's rental obligation and the doctrine of frustration

of purpose was inapplicable because of the plaintiff's fault. *Id.*

[¶ 22] In *Tallackson Potato Co., Inc. v. MTK Potato Co.*, 278 N.W.2d 417, 424 n. 6 (N.D.1979), in the context of addressing a claim for reformation of a contract, this Court concluded the failure of a third party, a cooperative association formed to buy potatoes from member growers, to honor its payment schedule for potatoes was not a basic assumption on which a contract between two member potato growers was entered. Because the cooperative association's failure to buy the potatoes was not a basic assumption for the contracting parties, this Court said the doctrine of frustration of purpose did not apply. *Id.*

[¶ 23] The common thread in our cases about the application of the doctrine of frustration of purpose to discharge a contractual obligation focuses on the principal purpose or basic assumption of the contract and whether that principal purpose or basic assumption has been substantially frustrated without fault of the parties. *Silbernagel*, 2011 ND 140, ¶ 16, 800 N.W.2d 320; *WFND*, 2007 ND 67, ¶ 18, 730 N.W.2d 841; *Tallackson Potato*, 278 N.W.2d at 424 n. 6. Under those cases, the doctrine focuses on whether events have occurred after formation of the contract to frustrate the principal purpose or basic assumption of the contract and involves interpretation of the principal purpose or basic assumption of the contract. *See Silbernagel*, 2011 ND 140, ¶ 16, 800 N.W.2d 320.

[¶24] The object of interpreting and construing a contract is to ascertain and give effect to the parties' mutual intention at the time of contracting. N.D.C.C. § 9–07–03; *Fargo Foods, Inc. v. Bernabucci*, 1999 ND 120, ¶ 13, 596 N.W.2d 38. The parties' intention must be ascertained from the writing alone, if possible. N.D.C.C. § 9–07–04; *Bernabucci,*

at ¶ 13. A contract must be construed as a whole to give effect to each provision, if reasonably possible. N.D.C.C. § 9–07–06; *Bernabucci*, at ¶ 13. The interpretation of a written contract to determine its legal effect is a question of law. *Bernabucci*, at ¶ 13.

[¶ 25] In construing the 1985 agreement between Harwood and Reiles Acres, the district court held:

> The principal purpose of the 1985 Agreement was to construct and maintain a sewage treatment facility for Harwood and Reile's Acres for the benefit of its customers and users.

> This purpose has been substantially frustrated by both Reile's Acres' and Harwood's contracting with the City of Fargo for their sewage needs and the Harwood Lagoons no longer providing the sewage needs of those entities, which, was an event, the nonoccurrence was a basic assumption on which the 1985 Agreement was made.

> Furthermore, the contractual responsibilities under the 1985 Agreement for the City of Harwood to pay toward maintenance costs is impracticable, and that impracticability was caused by both Reile's Acres and Harwood contracting with the City of Fargo for their sewage needs, and no longer using the Harwood Lagoons for their sewage needs, which, was an event, the nonoccurrence was a basic assumption on which the 1985 Agreement was made.

> Neither Harwood nor Reile's Acres were at fault for contracting with the City of Fargo for their sewage services and no longer using the Harwood Lagoons. Both entities had increased population that would place great strains on the Harwood Lagoons.

The duties of Harwood and Reile's Acres as to the 1985 Agreement are discharged.

[¶ 26] At trial, evidence was presented establishing the Harwood Lagoon was designed and constructed in 1985 to provide waste water treatment services for about 500 people. There was evidence presented that by 2010, Harwood and Reiles Acres each had separately grown to more than 500 people and had separately contracted with Fargo for their waste water treatment services. There was also evidence it was not cost-efficient to make repairs or upgrades to the facility to accommodate the increased population of the municipalities. The district court did not err in interpreting the principal purpose and basic assumption of the 1985 agreement and in finding that purpose was frustrated by the municipalities' growth and contracts with Fargo for waste water treatment services. The court also found the parties were not at fault for contracting with Fargo for waste water treatment services and no longer using the Harwood Lagoon for municipal waste water treatment services, because the contracts were prompted by the municipalities' population growth and the design capacity of the Harwood Lagoon. On this record, the district court did not err in finding the municipalities were not at fault for outgrowing the design capacity for the Harwood Lagoon and separately contracting with Fargo for their waste water treatment services. Under the law for declaratory judgment actions, Harwood was not required to breach the contract and be sued for breach of contract before it could raise frustration of purpose in a declaratory judgment action. *See* N.D.C.C. § 32–23–03 (a contract may be construed either before or after there has been a breach). The district court did not err in concluding the primary purpose and basic assumption of the 1985 agreement was frustrated by the municipalities' growth and contracts with Fargo for their waste water treatment needs and their no longer using the Harwood Lagoon for their municipal waste water treatment. Therefore, the district court did not err in applying frustration of purpose to the 1985 agreement between Harwood and Reiles Acres and discharging their obligations under that agreement.

[¶ 27] Moreover, the district court concluded Reiles Acres and Lake Shure Estates each had an undivided ownership interest in and right to use the six-inch force main running from the intersection of 45th Street and 52nd Avenue to the Harwood Lagoon. Lake Shure Estates obtained those interests from Lake Shure Properties in 1993, which in turn obtained the interests from Reiles Acres in 1985. The record supports the district court's conclusion that under its 1993 agreement with Lake Shure Properties, Lake Shure Estates received an interest in the six-inch force main running from the intersection of 45th Street and 52nd Avenue to the Harwood Lagoon. The district court did not err in determining the rights and interests of Harwood, Reiles Acres, and Lake Shure Estates under the applicable contracts.

## C

[¶ 28] Reiles Acres raises several claims relating to the partition by public sale. Reiles Acres asserts Lake Shure Estates does not own any land and lacked standing to initiate a partition action. Reiles Acres argues the district court lacked personal jurisdiction over all of the parties having a claim to the property and also asserts, if jurisdiction exists, the sale of the property was inappropriate because the property could be divided between the parties without the need for a forced sale. Reiles Acres further claims statutory pre-

requisites for a partition action were not satisfied.

[¶ 29] Partition actions are governed by N.D.C.C. ch. 32–16. Section 32–16–01, N.D.C.C., authorizes an action to partition real property by one or more of several joint tenants or tenants in common according to the respective rights of the interested persons, and a sale may be ordered if partition cannot be made without great prejudice to the owners. A partition complaint must specifically set forth the interests of all persons in the property, whether known or unknown. N.D.C.C. § 32–16–02. A summons must be directed to all joint tenants, tenants in common, and persons having an interest in the property and generally to all persons unknown who have or claim any interest in the property. N.D.C.C. § 32–16–05. "No person having a conveyance of, or claiming a lien on, the property, or some part of it, need be made a party to the action, unless such conveyance or lien appears of record." N.D.C.C. § 32–16–03.

[¶ 30] "Partition is a matter of right between cotenants" under N.D.C.C. § 32–16–01. *First Trust Co. v. Mast*, 385 N.W.2d 104, 105 (N.D.1986). Although the law favors partition in kind, N.D.C.C. § 32–16–12 authorizes a partition sale if partition in kind cannot be made without great prejudice to the owners. *Schmidt*, 2004 ND 189, ¶¶ 6–7, 687 N.W.2d 479. The burden of proving partition in kind cannot be made without great prejudice is on the party demanding the sale. *Id.* at ¶ 7. Partition is an equitable remedy governed by equitable principles. *Murphy v. Murphy*, 1999 ND 118, ¶ 11, 595 N.W.2d 571; *Green v. Gustafson*, 482 N.W.2d 842, 849 n. 4 (N.D.1992); *Schnell v. Schnell*, 346 N.W.2d 713, 715 (N.D.1984). District courts have "wide judicial discretion in partition actions to 'do equity' and to make a fair and just division of the property or

proceeds between the parties," and "great flexibility in fashioning appropriate relief for the parties." *Eastman v. Nelson*, 319 N.W.2d 134, 136 (N.D.1982). In *Schnell*, at 716–21, this Court recognized that all the owners of an interest in land require equal consideration for partition in kind, including consideration of sentimental attachment to the land, the situation of the owners, and the location and character of the land.

[¶ 31] A district court's findings in a partition action will not be reversed on appeal unless clearly erroneous. *Mougey Farms v. Kaspari*, 1998 ND 118, ¶ 33, 579 N.W.2d 583; *Schnell*, 346 N.W.2d at 715. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made." *Higgins v. Trauger*, 2003 ND 3, ¶ 10, 656 N.W.2d 9.

[¶ 32] In ordering partition by public sale, the district court held:

> The Harwood Lagoons is made up of three separate cells which operate together as a waste water sedimentation and treatment facility. The waste water entered the larger primary cell, cell number one, where sedimentation occurred. The waste water was then routed through secondary cells two and three for additional clarification, aeration, and other treatment before being discharged.
>
> . . . .
>
> The Harwood Lagoons requires continued upkeep and maintenance. Currently, the Harwood Lagoons is in poor condition requiring repairs in the sides of all three cells, including installing riprap, repairing leaks, removing sludge, and replacing valves.

. . . .

Here, the Harwood Lagoons has not been used since 2010. The Harwood Lagoons' nonuse has caused deterioration of the facility. Furthermore, all three cells operate as a single unit. The cells have no value individually. Therefore, partition by sale will afford the parties the greatest value for their respective interests.

[¶ 33] The district court's findings about the characteristics of the three-cell facility operating together as a single unit are supported by evidence in the record and are not clearly erroneous. The district court did not abuse its discretion in concluding partition by public sale was appropriate under the circumstances in this case, including the nature of the three-cell water treatment facility operating as a single unit, with the cells having no value individually. The district court did not err in ordering a partition by sale and distribution of the proceeds of the sale to Harwood and Reiles Acres in proportion to their ownership interests. Lake Shure Estates was not granted relief on the partition claim, and we reject Reiles Acres' claims about its involvement in the partition part of this action.

[¶ 34] Although the plaintiffs did not record a notice of the pendency of the action under N.D.C.C. § 32–16–04 when the partition action was brought, and we do not condone that failure, Reiles Acres recorded a notice before the property was sold and it has not demonstrated any prejudice by the statutory failure to record the notice when the action was brought. This record does not establish that any entity with a conveyance or lien of record in the partitioned property was not made a party to the partition action under N.D.C.C. § 32–16–03. Service by publication under N.D.C.C. §§ 32–16–05 and 32–16–06 was not necessary in this case. *See Schmidt v. Frank*, 140 N.W.2d 588, 594 (N.D.1966) (the provisions in N.D.C.C. §§ 32–16–05 and 32–16–06 directing summons to all persons unknown applies only in case of service of publication). The district court did not err in ordering partition by public sale of the Harwood Lagoon.

### III

[¶ 35] We have considered any remaining issues and arguments raised by the parties, and we conclude they are either unnecessary to our decision or are without merit. We affirm the declaratory judgment and the order confirming the partition sale.

[¶ 36] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, LISA FAIR McEVERS, and CAROL RONNING KAPSNER, concur.